**UNITED STATES of America, Appellee,**

**v.**

**John Gregory CROZIER, Appellant.**

**Nos. 720, 873, Dockets 92–1175, 92–1215.**

United States Court of Appeals, Second Circuit.

Argued Jan. 19, 1993.

Decided March 1, 1993.

Before: TIMBERS, WALKER, and McLAUGHLIN, Circuit Judges.

TIMBERS, Circuit Judge:

John Gregory Crozier, an architect in Albany, appeals from a judgment entered in the Northern District of New York, Con. G. Cholakis, *District Judge*, convicting him of conspiracy to bribe a public official, in violation of 18 U.S.C. § 371 (1988), and of making false statements in subscribing a tax return, in violation of 26 U.S.C. § 7206(1) (1988). The primary object of the conspiracy was a $30,000 payment made to James J. Coyne, Jr., the Albany County Executive, who was instrumental in helping Crozier obtain a contract with Albany County to provide architectural services for a civic center (now known as the Knickerbocker Arena). Crozier received a pre-Sentencing Guidelines sentence of eighteen months imprisonment on the conspiracy count and a concurrent six month sentence on the false statements count. He was fined $25,000 and was required to pay a $50 special assessment on each count.

Crozier claims that the court erred in instructing the jury as to the parameters of the statute, erred in not allowing him to see the charge before summation, erred in permitting the government to elicit an alleged co-conspirator's invocation of the Fifth Amendment before the jury, and erred in limiting his examination of a key witness. He further claims that there was insufficient evidence to support the false tax return verdict. Appellee cross appeals, claiming that appellant should be sentenced under the Guidelines.

We reject Crozier's claims on appeal and appellee's claim on the cross appeal. We affirm the judgment of the district court finding Crozier guilty of conspiracy and filing a false tax return.

## I.

We summarize only those facts and prior proceedings believed necessary to an understanding of the issues raised on appeal.

The Albany County Industrial Development Agency (IDA) oversaw the development of the civic center project from late

George A. Yanthis, Asst. U.S. Atty., Albany, NY (Gary L. Sharpe, U.S. Atty., and Thomas Spina, Jr., Asst. U.S. Atty., on the brief), for appellee.

Raymond A. Kelly, Jr., Albany, NY, for appellant.

1984 or early 1985 until the summer of 1985. Coyne was one of the three members of the IDA. Joseph V. Zumbo, a close friend of Coyne, was its general counsel. Coyne played a prominent role in the IDA. In 1985, the IDA retained Crozier's firm to perform preliminary studies for the construction of the civic center.

In the summer of 1985, the county legislature took control of the project. A special committee was established to oversee the project and make recommendations to the legislature. Without interviewing any other architects, the committee, in 1986, recommended that the legislature select Crozier's firm as the architects for the project. The committee members testified that Crozier had an advantage because of the work he had already done and they were satisfied with his firm's presentation. The County and Crozier entered into a contract on April 18, 1986.

Even though the legislature had taken charge of the project, Coyne remained quite influential in the development of the project. He frequently met with the project manager and was consulted about problems. He consulted with legislators about aspects of the project which would result in increasing Crozier's fee and attended many of the meetings.

In June or July of 1986, Crozier claims he decided to give $30,000 to Coyne as a loan. Since both men were involved in the civic center project at that time, Crozier contends that he wanted to avoid the appearance of impropriety that would be created by giving the money directly to Coyne. He sought help from Zumbo. Crozier and Zumbo met in a restaurant. Zumbo suggested that the deal be structured as two transactions: (1) Crozier would lend $30,000 to Zumbo, and (2) Zumbo would lend $30,000 to Coyne.

On or about July 9, 1986, Crozier's firm issued him a $30,000 check. It initially was listed as a loan to an officer and then listed as a bonus or compensation for Crozier. Crozier then gave Zumbo a personal check for $30,000, with the notation "real estate dev." on the check. Zumbo deposited the check in his law office's general operating account, and gave Coyne a check from the same account for $30,000. Coyne deposited $30,000 in his personal bank account on July 9, 1986.

None of Crozier's financial statements or loan applications for the period of 1987–89 reflects a $30,000 asset, as loans receivable generally are considered. Further, no loan documents were created in 1986 for the transaction. There was no repayment schedule and no interest charges. At trial, Zumbo testified that in 1989 he created a note from Coyne to himself, but did not recall whether he had created a note from himself to Crozier. Zumbo created a loan document between himself and Crozier in 1991, but dated it July 7, 1986, without indicating that it had been created five years later.

On September 25, 1991, Crozier was indicted in three counts. Count I charged Crozier with conspiracy under 18 U.S.C. § 371 corruptly to give or agree to give anything of value to Coyne "for or because of" Coyne's conduct in connection with transactions involving the civic center project in violation of 18 U.S.C. former § 666(c) (hereinafter, § 666(c)). Count II charged Crozier with "knowingly, willfully, and corruptly" giving and agreeing to give $30,000 to Coyne in connection with business and transactions of Albany County and the IDA, including awarding the contracts in 1985 and 1986 to Crozier's firm for the architectural services for the civic center project, and for the performance of the contract and change orders in violation of § 666(c).

Count III charged Crozier with filing a false tax return in violation of 26 U.S.C. § 7206(1). In 1987, Crozier's firm issued a check for $12,000 to Clark D. Richey, C.P.A. It was posted in the corporate books and records as a professional legal fee, but actually was used as an investment in a horse partnership. An accountant for the Crozier firm testified that he contacted the firm's bookkeeper regarding the $12,000 payment and was told that she did not know the purpose of the expenditure, an account confirmed by the bookkeeper. Although the accountant did not recall con-

tacting Crozier regarding the $12,000 payment, he testified that he generally dealt with Crozier directly when the bookkeeper was unable to answer a question. After its communications with Crozier Associates, the accounting firm changed the classification of the expenditure to "accounting fees." Ultimately, the $12,000 payment was deducted on Crozier Associates' 1987 U.S. corporate income tax return as a professional fee relating to an organizational plan. The indictment charged Crozier with signing the return under penalty of perjury, and declaring it to be true and correct, even though he knew the money was for an investment and not for the "professional fees" listed.

Throughout the trial, Crozier contended that he should be acquitted because § 666(c) prohibited only bribery—a specific, corrupt intent to influence *present or future* decisions. Through a motion for a judgment of acquittal prior to jury selection, Crozier argued that this critical element was missing from the indictment. There was no proof at trial of any intent to influence present or future decisions of Coyne, primarily because the contract already had been awarded when the loan was given. Crozier also sought to limit the government's proof to a strict bribery theory through voir dire questions, objections, and proposed jury instructions.

The court instructed the jury with respect to the conspiracy charged in Count I and with respect to Count II by basically following the language of the indictment, using the "for or because of" Coyne's conduct language. With respect to Count II, the court charged that in order to convict under § 666(c), the jury must find beyond a reasonable doubt that Crozier knowingly and willfully gave or agreed to give a thing of value to Coyne for or because of Coyne's conduct in connection with the civic center project, and that Albany County received more than $10,000 in federal financial assistance in any one year. The court further charged that § 666(c) would be violated if

"the defendant gave or agreed to give the $30,000 for or because of conduct previously performed or to be performed by James J. Coyne, Jr., in connection with architectural services provided by the defendant relating to the Albany County Civic Center. Doesn't matter if the thing of value was given before or after Coyne's conduct as long as you find beyond a reasonable doubt that it was given for or because of that conduct."

In the midst of deliberations, the court received a note from the jury requesting clarification as to whether the government must have proven all parts of Counts I and II. The court took the opportunity to advise the jury on the various elements which make up each count. As to Count I, the court instructed on the basic elements of a conspiracy, giving the jury the two theories of the object of the conspiracy: (1) if Crozier agreed to give or did give something of value to Coyne *in connection with* the civic center project, or (2) if Coyne solicited, accepted, or agreed to accept anything of value from Crozier *because of the conduct of Coyne in connection with* the civic center project. As to Count II, the court instructed that the $30,000 must have been given pursuant to an agreement between Coyne and Crozier under which Coyne would do something for Crozier in relation to the civic center project, or that the $30,000 was given without an agreement but with the intent to influence Coyne to do something of value for Crozier in the future in relation to the civic center project. The court gave the jury special interrogatories for Count II that were consistent with the court's instructions on that count. No such interrogatories were given for Count I.

The jury found Crozier guilty on the conspiracy charged in Count I and for filing a false tax return charged in Count III. It acquitted him of the substantive charge in Count II.

On appeal, Crozier asserts that the conspiracy conviction was based on a gratuity theory rather than bribery, which he claims is impermissible under the statute; the court made a number of errors in its charge to the jury; the jury was prejudiced by the testimony of an alleged co-conspira-

tor; the court excluded essential testimony; and there was insufficient evidence to support the false tax return verdict. The government cross appeals, asserting that Crozier should have been sentenced under the Guidelines.

## II.

(A) *Crozier's Claim that His Conviction was on a Gratuity and not a Bribery Theory*

Section 666(c) was enacted to punish corrupt payments made to state or private officials who disburse federal funds. S.Rep. No. 225, 98th Cong., 2d Sess. 369–70, *reprinted in* 1984 U.S.C.C.A.N. 3182, 3510–11. It was enacted to supplement 18 U.S.C. § 201 which covered both bribery and gratuities made to federal public officials. 18 U.S.C. §§ 201(b)(1) & (c)(1)(A) (1988). Unlike § 201, however, § 666(c) does not distinguish between bribery and gratuity, creating some confusion. The language of § 666(c) is similar to the gratuity language of § 201, but the legislative history refers *only* to bribery and the maximum penalty under the statute is closer to the maximum penalty under § 201's bribery provisions. *United States v. Jackowe,* 651 F.Supp. 1035, 1036 (S.D.N.Y.1987).

On appeal, Crozier asserts that the court erred in its jury charge. He claims that the charge with respect to Count I was ambiguous and left room for the jury to convict him on a gratuity theory, as well as on a bribery theory. Crozier asserts, however, that § 666(c) is a bribery only statute, and the fact that his conviction could have been grounded on a gratuity theory makes his conviction reversible in that the court allowed the jury to convict on a legally insufficient theory. He says that, while the court submitted special interrogatories to the jury for Count II—the substantive bribery charge—which limited the jury's verdict to a bribery theory rather than a gratuity theory, such was not done for the conspiracy charge. He contends therefore that the jury was not instructed on a bribery only theory for the conspiracy count and there is a possibility (if not a likelihood) that the jury based his conspiracy convic-

tion on facts which lend themselves to a gratuity theory only. He contends that his argument is bolstered by the fact that, although he was convicted for conspiracy, he was acquitted on the substantive count, for which the jury received specific instructions on a bribery only theory.

If § 666(c) were a bribery only statute, Crozier is correct in his claim that the jury charge was faulty. In the court's initial charge, the jury was instructed that Crozier could be found guilty if he gave Coyne money "in exchange for Mr. Coyne's performance or promise to perform some official act...." While this instruction was given for Count II, the substantive charge, it was made clear to the jury that the substantive charge was the object of the conspiracy. Further, the indictment, which the jury had during deliberations, did not charge bribery, but stated that the object of the conspiracy at issue was

> "[t]o corruptly give and agree to give anything of value to James J. Coyne, Jr. because of [the] conduct of James J. Coyne Jr. in connection with the business, transaction, and series of transactions of Albany County, and its IDA, involving anything of value of $5,000 or more [,] in violation of 18 U.S.C. former § 666(c)...."

Based on the plain meaning of the indictment, therefore, there was ample leeway for a jury to convict on a gratuity theory. Even though in the midst of deliberations the court answered the jury's question by limiting Count II to a bribery only theory, this is no cure for the earlier ambiguities. It is quite possible that, by the time this limitation was given, the jury already had reached its verdict on Count I, finding appellant guilty under the ambiguous and broader charge. Count I called for a general verdict, no interrogatories having been given. As the reviewing court, therefore, we have no way of determining what was the jury's basis for its verdict.

■ We reject, however, Crozier's argument (and the interpretation given by the district court) that § 666(c) is a bribery only statute. Although Judge Sweet's analysis of the statute in *Jackowe, supra,*

651 F.Supp. at 1035–36, construed § 666(c) as a bribery only statute, we believe that the statute, like § 201 (which it was enacted to supplement), should be construed to include gratuities as well.

This assertion is supported by the broad language of § 666(c) which provides:

"(c) Whoever offers, gives or agrees to give an agent of an organization or of a State or local government agency, described in subsection (a), anything of value *for or because of the recipient's conduct* in any transaction or matter or any series of transactions or matters involving $5,000 or more concerning the affairs of such organization or State or local government agency, shall be imprisoned not more than ten years or fined not more than $100,000 or an amount equal to twice that offered, given or agreed to be given, whichever is greater, or both so imprisoned and fined." (emphasis added).

The "for or because of" language of this statute includes both past acts supporting a gratuity theory and future acts necessary for a bribery theory. Moreover, § 201(c)(1)(A), the section which covers gratuities given to federal officials, provides, "[w]hoever ... gives, offers, or promises anything of value to any public official ... *for or because of any official act performed* ..." shall be subject to fines and imprisonment. 18 U.S.C. § 201(c) (emphasis added). It is the "for or because of" language in § 201(c)(1)(A) which distinguishes it as a gratuity section from the bribery prohibitions found in § 201(b)(1), which applies to payments or agreements to make payments with the intent to "influence" or "induce" official action. S.Rep. No. 2213, 87th Cong., 2d Sess. (1962), *reprinted in* 1962 U.S.C.C.A.N. 3852, 3856–57 (discussing former § 201). It logically follows, therefore, that where Congress used the same language in two statutes, the second of which was enacted to supplement the first, the same meaning should be applied to both.

This interpretation makes this case a clear one, as the facts lean more toward a gratuity theory. Moreover, we do not have to read the minds of the jurors and assume that they took the mid-deliberation jury charge for Count II and applied it to Count I. Instead, we believe that it was possible, and proper, for the jury to have found the object of the conspiracy to be payment for past influence.

Unlike Judge Sweet, we do not believe that one of the two meanings of § 201, prohibiting both bribery and gratuities given to federal officials, needs to be lost in a statute designed to extend the offense to state and local officials. The *Jackowe* court's rationale for limiting the statute to only one of the theories is that the statute contains no explicit intent and therefore it must imply *either* intent for bribery *or* intent for a gratuity. We disagree. If the charge is brought on a bribery theory, then the government must prove the intent to reward an official for future conduct; if the charge is brought on a gratuity theory, the intent must be to reward the official for past conduct.

Crozier relies on the fact that an amendment added in 1986 to § 666(c), making the statute applicable only to payments made corruptly, with the intent to influence or reward an official, made § 666 applicable to gratuities. This amendment, however, is identical to an amendment made to 18 U.S.C. § 215, a bank bribery statute. The amendments were made to limit the scope of these statutes, and not to broaden them to include new theories. H.Rep. No. 99–335, 99th Cong., 2d Sess. 5 (1986), *reprinted in* 1986 U.S.C.C.A.N. 1782, 1786–87; H.Rep. 99–797, 99th Cong., 2d Sess. 30 (1986), *reprinted in* 1986 U.S.C.C.A.N. 6138, 6153 n. 9.

Judge Sweet also emphasized that § 666 is titled "Theft or Bribery Concerning Programs Receiving Federal Funds", and that the legislative history of the statute "speaks entirely in terms of 'bribery,' and never uses the words 'gratuity' or 'gift.' " *Jackowe, supra,* 651 F.Supp. at 1036; *see* S.Rep. No. 225, 98th Cong., 2d Sess. 369–70 (1984), *reprinted in* 1984 U.S.C.C.A.N. 3182, 3510–11 (emphasis added). The Senate Report, however, addresses the purpose of this section as one which will augment

the class of persons who are liable under § 201. The report states that it was unclear under § 201 whether state or local officials were considered "public officials" per the statute. The report discusses § 201 in general terms, without limiting it to a specific section (such as the section which provides for the "bribery theory"). The report then goes on to state that the intent of enacting § 666 was to cover situations like *United States v. Mosley*, 659 F.2d 812 (7 Cir.1981), a case in which a state official was convicted of violating a gratuity provision of former 18 U.S.C. § 201(g), now *id.* § 201(c)(1)(B). Judge Sweet's reliance on the loose use of the term "bribery" in the legislative history appears to be unfounded.

Judge Sweet also noted that the ten year maximum sentence available under § 666(c) is far closer to the fifteen year maximum term available under the bribery provision of § 201, *see* 18 U.S.C. § 201(b), than to the two year maximum available under the gratuity provision of § 201, *id.* § 201(c). *Jackowe, supra,* 651 F.Supp. at 1036 (citing former § 201). Judge Sweet was concerned that there might be equal protection or disproportionality problems if § 666(c) were construed to permit greater punishments to persons who give gratuities to state and local officials than to persons who give gratuities to federal officials. Whatever the merits of Judge Sweet's constitutional concerns, they are not implicated in this case. Crozier received an eighteen month sentence on the conspiracy count, well within the two year maximum applicable to violations of § 201(c).

(B) *Section 666(c) is not Void for Vagueness*

■■■ Crozier asserts that § 666(c) is void for vagueness and was applied unconstitutionally against him because it does not include an explicit mens rea requirement, and fails clearly to describe the conduct it prohibits. He is correct in his claim that a statute must describe with some particularity the conduct it proscribes or requires. *Kolender v. Lawson,* 461 U.S. 352, 358 (1983). A statute is not unconstitutionally vague if it sufficiently alerts or-

dinary people as to what is prohibited, and is not applied in an arbitrary or discriminatory way. *Id.* at 357.

■■■ We disagree with Crozier's assertion. We believe that the statute does contain the mens rea of intent, and therefore is not void for vagueness. Further, § 666(c) was not unconstitutional as applied to Crozier. The court clearly instructed the jury of the mens rea required by Crozier for a violation of § 666(c). In the charge with respect to Count I, the court specifically stated that the conspiracy must have been *willfully* formed and Crozier must have *willfully* joined it. The court then defined willful. The court also gave adequate instructions about the meaning of the "for or because of" language in the statute. Since we hold that § 666(c) could be violated on a gratuity theory, the fact that the court's instruction did not adequately distinguish between gratuity and bribery is not a problem, as Crozier contends on appeal.

We hold that there was a mens rea requirement included in the statute as applied to Crozier, and the statute was not unconstitutionally vague.

(C) *Crozier Did Not Receive Proposed Jury Instructions Before Summation, Nor Were His Requests For Interrogatories Granted*

■■ Crozier asserts that the court committed a "fundamental error" by not providing him with a copy of the jury instructions before his summation and by failing to submit to the jury special interrogatories requested by Crozier concerning the scope of § 666(c). Fed.R.Crim.P. 30 requires the court to *rule* on requests for jury instructions before summation in order to allow the parties the opportunity to refer to the instructions in their summations. "If the Rule is violated, reversal is required where the defendant can show that he was 'substantially misled in formulating his arguments' or otherwise prejudiced." *United States v. Eisen,* 974 F.2d 246, 256 (2 Cir. 1992) (quoting *United States v. Smith,* 629 F.2d 650, 653 (10 Cir.), *cert. denied,* 449 U.S. 994 (1980)).

In the instant case, at a pre-charge conference, Crozier learned of the two legal theories about which the court would instruct the jury. Also, the court never agreed to submit the interrogatories that Crozier requested, but merely stated that they would be considered. Crozier was not *misled* as to what the jury charge would be. While it might be better practice to allow the parties to obtain the charge before the summation, in this case reversal is not required, since Crozier was well aware of what the ultimate charge would be and was able to refer to it in his summation.

### (D) *Joseph Zumbo's Invocation of Fifth Amendment in Presence of the Jury*

■ At trial it was known to the court and counsel that, when Joseph Zumbo was called as a witness, he would invoke his Fifth Amendment privilege against self-incrimination. Crozier requested that such invocation of the privilege should be done outside the presence of the jury to alleviate the impact on the jury. The court allowed the jury to be present. Crozier now asserts that the court committed reversible error by allowing the jury to use inferences arising from a witness' invocation of the privilege.

In *Namet v. United States*, 373 U.S. 179 (1963), the Supreme Court described two situations in which a witness' invocation of his Fifth Amendment privilege before a jury in response to a prosecutor's questions may give rise to reversible error: "1. 'prosecutorial misconduct, when the government makes a conscious and flagrant attempt to build its case out of inferences arising from the use of the testimonial privilege'; and 2. when 'in the circumstances of a given case, inferences from a witness' refusal to answer added critical weight to the prosecution's case in a forum not subject to cross-examination.'" *Rado v. Connecticut*, 607 F.2d 572, 581 (2 Cir.1979) (quoting *Namet, supra*, 373 U.S. at 186–87), *cert. denied*, 447 U.S. 920 (1980). In applying the *Namet* rule, our cases look to a number of factors, including

"[1] the prosecutor's intent in calling the witness, [2] the number of questions asked, [3] their importance to the state's case, [4] whether the prosecutor draws any inference in his closing argument from the witness' refusal to answer ... and [5] whether the trial judge gives a curative instruction."

*Id.* at 581.

In this case, first, there is no evidence that the government had an improper motive in calling Zumbo. Rather, the government extended immunity to the witness in order that he might be able to testify fully before the jury. Second, Zumbo asserted his privilege only three times before the jury. Third, the questions Zumbo refused to answer, whether he had aided Coyne in obtaining County employment and whether he could identify government exhibits, were peripheral to the government's case against Crozier. Fourth, at no time during the trial did the government attempt to draw any inference from Zumbo's assertion of his privilege. Finally, the court gave an appropriate cautionary instruction. Under these circumstances, we find no reversible error in the district court's allowing Zumbo to assert his privilege in the jury's presence.

### (E) *Zumbo's Grand Jury Testimony and Conversation with Crozier*

■ Crozier argues that the court erred in limiting his cross-examination of alleged co-conspirator Zumbo, precluding him from eliciting details of prior conversations between Zumbo and Crozier under the rule of completeness and in order to rebut a government theory of recent fabrication. In his examination of Zumbo, Crozier sought to bolster a defense theory that he intended the payment to Coyne to be a loan rather than an outright gift. However, as we have held in connection with § 201, any payment that the defendant subjectively believes has value, including a loan, constitutes a thing "of value" within the meaning of § 666(c). *United States v. Williams*, 705 F.2d 603, 622–23 (2 Cir.), *cert. denied*, 464 U.S. 1007 (1983); *see also United States v. Gorman*, 807 F.2d 1299, 1305 (6 Cir.1986) (finding loan to be thing "of value" under former 18 U.S.C. § 201(g), now *id.* § 201(c)(1)(B)), *cert. de-*

*nied,* 484 U.S. 815 (1987). Thus, the issue of whether the payment was a gift or a loan is irrelevant to the question of Crozier's guilt or innocence in this case, and his evidentiary arguments consequently fail on the ground of relevance.

**(F) *Evidence to Support the Verdict of Filing a False Tax Return***

 Crozier claims that there was insufficient evidence to support the guilty verdict on Count III. He bases this claim on the standard used in embezzlement cases which allows the conviction to be upheld only if the evidence inexorably supports an inference of guilt and is not consistent with a theory of innocence. *United States v. Lavergne,* 805 F.2d 517, 522 (5 Cir.1986). This is not an embezzlement case, however, and we must look at the evidence in the light most favorable to the government. *Glasser v. United States,* 315 U.S. 60, 80 (1942). Based on the facts of this case, which include the books and the testimony of the bookkeeper and accountant, a rational trier of fact could have made this finding beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 319 (1979).

We hold that the verdict must stand.

**(G) *Cross Appeal Claiming the Court Erred in not Sentencing Under the Guidelines***

 The government asserts that this is a "straddle case," one that involves a conspiracy which began prior to the effective date of the Guidelines and continued after that date—November 1, 1987. The government therefore claims that Crozier should have been sentenced under the Guidelines. In this case, Crozier was convicted of a conspiracy to violate § 666(c). The conspiracy ended with the $30,000 payment to Coyne. That was what the indictment defined as the object of the conspiracy. The court correctly held that the acts which occurred after November 1, 1987 were merely acts to cover up the conspiracy and were not done in furtherance of the conspiracy. Acts of concealment, without more, do not "extend the life of the conspir-

acy after its main objective has been obtained." *Eisen, supra,* 974 F.2d at 269 n. 8; *Grunewald v. United States,* 353 U.S. 391, 401 (1957).

We hold that this is not a "straddle case." Crozier should not have been sentenced under the Guidelines.

**III.**

To summarize:

Section 666(c) prohibits the giving of both bribes and gratuities to state or local officials. Crozier was not *wrongly* convicted if the jury based its verdict on a gratuity theory. Further, the statute was applied constitutionally to Crozier. The court did not commit reversible error with regard to Zumbo's testimony. There was sufficient evidence to support a guilty verdict on the false tax return charge. As for the cross appeal, this is not a "straddle case"; the Guidelines are not applicable.

Affirmed.