**UNITED STATES of America,
Plaintiff–Appellee,**

**v.**

**Ruben DIAZ, Defendant–Appellant.**

No. 89–5684.

United States Court of Appeals,
Eleventh Circuit.

Nov. 6, 1990.

Joel Hirschhorn, Broad & Cassel, Miami, Fla., for defendant-appellant.

Dexter W. Lehtinen, U.S. Atty., Michael P. Sullivan, Carol E. Herman, Linda Collins–Hertz, Asst. U.S. Atty., Miami, Fla., for plaintiff-appellee.

Before HATCHETT and CLARK, Circuit Judges, and MORGAN, Senior Circuit Judge.

MORGAN, Senior Circuit Judge:

Appellant, Ruben Diaz, was convicted following a jury trial of conspiracy to import cocaine as proscribed by 21 U.S.C. § 963. He received a five year sentence of imprisonment and is currently incarcerated. Appellant challenges his conviction and sentence alleging that: (1) the evidence was insufficient to establish his participation in the conspiracy; (2) he was denied a fair trial by the prosecutor's improper comments; and (3) the district court erred in failing to give an instruction on withdrawal from the conspiracy. Having reviewed the record and given due consideration to appellant's arguments, we affirm the judgment and sentence of the district court.

## SUFFICIENCY OF THE EVIDENCE

■ To support a conviction for conspiracy, the government must prove only that two or more persons agreed to commit a crime, that the defendant knew of the conspiratorial goal, and that he voluntarily participated in helping to accomplish that goal. *United States v. Lee*, 695 F.2d 515, 518 (11th Cir.), *cert. denied*, 464 U.S. 839, 104 S.Ct. 130, 78 L.Ed.2d 125 (1983). The existence of such an agreement may be proved by either direct or circumstantial evidence; a common scheme or plan may be inferred from the conduct of the alleged participants or from other circumstances. *United States v. Bascaro*, 742 F.2d 1335, 1359 (11th Cir.1984), *cert. denied*, 472 U.S. 1017, 105 S.Ct. 3476, 87 L.Ed.2d 613 (1985). It is not necessary for the government to

disprove every reasonable hypothesis of innocence as the jury is "free to choose among reasonable constructions of the evidence." *United States v. Vera*, 701 F.2d 1349, 1357 (11th Cir.1983) (quoting *United States v. Bell*, 678 F.2d 547, 549 (5th Cir. Unit B 1982) (en banc), *aff'd*, 462 U.S. 356, 103 S.Ct. 2398, 76 L.Ed.2d 638 (1983)).

■ In judging the sufficiency of the evidence, this Court must view the evidence in the light most favorable to the government, *Glasser v. United States*, 315 U.S. 60, 62 S.Ct. 457, 86 L.Ed. 680 (1942), accepting reasonable inferences and credibility choices made by the jury. *United States v. Sanchez*, 722 F.2d 1501, 1505 (11th Cir.), *cert. denied*, 467 U.S. 1208, 104 S.Ct. 2396, 81 L.Ed.2d 353 (1984). Therefore, we summarize the evidence in the light most favorable to the government.

David Posada, a Colombian national, desired to import cocaine into the United States from Colombia, South America. Posada enlisted the aid of his brother-in-law, Ray Perez, a City of Miami police officer. Perez recruited several other Miami police officers to assist in the importation, including George Canizares and Reggie Capiro. After an initial planning meeting with Posada at which it was decided that the cocaine would be flown from South America to Texas and then transported over land to Florida, Perez concluded that additional manpower would be needed to guard the cocaine. Appellant was approached by Perez and Canizares, who advised him that he would earn $30,000 for his services in guarding the cocaine shipment from Texas to Miami.

Subsequent to this approach, appellant, Capiro, and another Miami police officer, Arturo De La Vega, traveled to McAllen, Texas, to meet with Perez and Posada. Appellant packed a Walther PPK and a Remington shotgun for the trip to Texas and informed his wife that he was going to vacation in Texas and go hunting. While in McAllen, appellant sat in on discussions regarding the importation plan and it was understood that he would act as a guard for the shipment. The group subsequently

moved on to South Padre Island to await the commencement of the importation scheme. At South Padre Island, the group devoted themselves primarily to recreational activities, however, at some point during this trip, Capiro sawed off appellant's shotgun. The plan was ultimately delayed by the murder of a Columbian official, and appellant returned to Miami.

Subsequently, appellant made another trip to Texas and participated in the search for a landing strip for the airplane. Ultimately, appellant returned to Texas to retrieve his firearms which had been left with a coconspirator, Larry Thompson, for safe keeping.

At the time of his arrest, appellant informed F.B.I. agent Judd that he traveled to Texas and participated in an unsuccessful attempt to import cocaine. Appellant testified in his own defense that although he knew discussions concerning the importation of cocaine were going to occur on his trips to Texas, he did not plan to participate in the scheme and simply went along to party. He denied telling agent Judd that he participated in the conspiracy.

It is undisputed that the conspirators' attempt to import cocaine never proceeded past the planning stages. That is, no load of cocaine was ever secured or brought into this country. We believe, however, that a reasonable jury could conclude from the foregoing evidence that appellant was guilty of conspiracy to import cocaine and, therefore, we sustain the jury's verdict. *See United States v. Montes–Cardenas*, 746 F.2d 771, 778 (11th Cir.1984) (jury's verdict must be upheld if any reasonable construction of the evidence allowed the jury to find guilt beyond a reasonable doubt).

## PROSECUTORIAL MISCONDUCT

■ Appellant argues that the prosecutor engaged in an improper attempt to link appellant's crime to the offenses committed by the "Miami river cops" and that he was severely prejudiced by this action.

Appellant's offense was committed in 1984. Beginning in 1985 and subsequent years, a group of City of Miami police officers known as the "river cops" engaged in a pattern of activities which involved "ripping off" drug dealers and ultimately resulted in the drowning deaths of three drug dealers. Appellant was not involved in the "river cops" cases although several of his coconspirators were. Indeed, Reggie Capiro, an admitted "river cop" testified in this trial as part of his plea bargain with the government on charges stemming from the "river cops" incidents.

In considering this issue we observe that appellant never made a specific objection to those comments which he now argues are most egregious and require reversal. Appellant objects to the following statements made during the prosecutor's rebuttal closing argument:

> The Government didn't bring up all the other drug crimes by many other policemen, including some in this conspiracy. Arturo De La Vega for one. Three men got drowned in the river.

> Again, I don't know why we are discussing that. You want to know what could have prevented three men from drowning in the Miami River in July, '85? Ruben Diaz could have prevented three men from drowning in the river if he had been a good cop in June or any other month in 1984, and reported the men he was participating with.

> That would have prevented three men from drowning in the river …

> Under Ruben Diaz' theory of no harm, no foul, if you shoot at somebody and miss—big deal. Nobody got hurt. Let's forget about it. That is this whole conspiracy.

> He forgot it. Five or six years his pals went on to do other rip-offs he could have prevented. He was the bad cop.

Appellant's sole objection to the closing argument, made not at the conclusion of that argument but at the conclusion of the jury instructions, was as follows:

> I would move for a mistrial on the ground that at some point in the closing arguments he made a statement other defendants who wanted bigger better things.

He specifically said Arturo De La Vega went on to commit other crimes. There was no evidence of that during the course of the trial.

There was no evidence of Mr. De La Vega at all.[1] There was no testimony as to it. I think it was highly prejudicial, improper and based on nothing presented to the court.

While the prosecutorial argument objected to may have exceeded the bounds of good judgment, we do not believe it amounted to plain error.[2] *See United States v. Young*, 470 U.S. 1, 16, 105 S.Ct. 1038, 1046, 84 L.Ed.2d 1 (1985) (finding prosecutor's statements to be inappropriate but not plain error, because they did not undermine the fundamental fairness of the trial or contribute to a miscarriage of justice). Even assuming defense counsel's objection to the prosecutor's argument was sufficient, appellant is not entitled to a new trial. The jury was properly instructed not to consider the arguments of the attorneys as evidence, and we have concluded that there was sufficient evidence from which a reasonable jury could find guilt. Thus, on this record, we conclude that any error was harmless. *See United States v. Bascaro*, 742 F.2d at 1353 (to obtain a new trial based on a claim of prosecutorial misconduct during closing argument, challenged remark must be both improper and prejudicial to a substantial right of the defendant).

## JURY INSTRUCTION ON WITHDRAWAL

■ Appellant argues that the district court erred in refusing to give his requested jury instruction on withdrawal from the conspiracy, alleging that there was some evidence in the record which supported the withdrawal defense. To prevail on this claim, appellant must show that the requested instruction was correct, that it was not substantially covered by the other in-structions delivered, and that it concerned a point in the trial so important that the failure to give the instruction severly impaired the defense. *See United States v. Finestone*, 816 F.2d 583, 588 (11th Cir.), *cert. denied*, 484 U.S. 948, 108 S.Ct. 338, 98 L.Ed.2d 365 (1987); *United States v. Sans*, 731 F.2d 1521, 1529–30 (11th Cir.1984), *cert. denied*, 469 U.S. 1111, 105 S.Ct. 791, 83 L.Ed.2d 785 (1985).

■ The requested jury instruction is not included on the record on appeal so it is impossible to determine whether or not that instruction was correct. Appellant argues in his reply brief that this instruction was omitted from the record and he should not be penalized for this omission, however, he has made no attempt to supplement the record before the Court with a copy of the instruction. Although this alone warrants affirmance on this issue, we also note that the district court correctly concluded that there was no evidence in the record supporting the affirmative defense of withdrawal and thus, appellant was not entitled to a withdrawal instruction. *See United States v. Finestone*, 816 F.2d at 589 (mere cessation of activity in the conspiracy is not sufficient to establish withdrawal, rather an affirmative step of disavowal is required). Appellant argues that his refusal to talk to one of the coconspirators, Thompson, provides some evidence of withdrawal, but we find that this action, occurring after the conclusion of all the acts which gave rise to the conspiracy charge, is insufficient evidence of withdrawal to merit an instruction on this affirmative defense. *Id.*

For these reasons, we AFFIRM the judgment of conviction and the sentence of the district court.

---

1. To the contrary, Reggie Capiro testified without objection that De La Vega was one of the "river cops."

2. Even if we were to deem the statement in the closing argument to be improper, it is clear to us that the remaining prosecutorial comments and questions referenced in appellant's brief, which were not objected to at trial, do not rise to the level of plain error.