United States Court of Appeals,

Eleventh Circuit.

No. 95-4422.

UNITED STATES of America, Plaintiff-Appellee,

v.

Mario M. GONZALEZ, a.k.a. Nene, a.k.a. Alex Garcia, a.k.a. Jorge Perez, a.k.a. Jesus Hernandez, a.k.a. El Nene, a.k.a. Miguel, a.k.a. Mario Gonzalez, a.k.a. Alex Pino, a.k.a. Angelberto Marcias, Defendant-Appellant.

Sept. 26, 1997.

Appeal from the United States District Court for the Southern District of Florida. (No. 93-418-CR-DLG), Donald L. Graham, Judge.

Before ANDERSON and EDMONDSON, Circuit Judges, and ROSENN[*], Senior Circuit Judge.

EDMONDSON, Circuit Judge:

Late in 1989, warrants for the arrest of the defendant, Mario M. Gonzalez, were issued in the District of Puerto Rico and the Southern District of Florida. The U.S. Marshal's Service began looking for Gonzalez shortly thereafter. In their search for Gonzalez, the marshals monitored telephone calls, surveilled friends and family members, and interviewed informants. As a result of these efforts, the marshals came to believe that Gonzalez was registered at the Princess Motel, Room 268, in Miami, Florida under the false name of "Jorge Perez."

Deputy Marshals Branyon and McDermott—along with other marshals—therefore put the Princess Motel under surveillance. Branyon checked the parking lot and interviewed the front desk clerk, who was unable to identify a picture of Gonzalez as Jorge Perez, the occupant registered in Room 268. Branyon compared the handwriting of the person who had checked into Room 268 with a sample of Gonzalez's. Branyon concluded that there were similarities and that, based on everything he had seen, it was likely that Jorge Perez was really Gonzalez. Branyon ordered officers to the Princess Motel so that the entrances could be blocked, and Room 268 was monitored.

---

[*]Honorable Max Rosenn, Senior U.S. Circuit Judge for the Third Circuit, sitting by designation.

Around 3:00 a.m., Branyon returned to the front desk and observed that the control panel indicated that the door between Room 268 and the adjoining parking garage was being opened. He informed the other officers of this development. A short time later, Branyon observed a red Blazer leave Room 268's parking spot. The Blazer proceeded through the parking lot until its path was blocked by a City Police car and a U.S. Marshal vehicle. The Blazer stopped; Agent Branyon yelled "Police. Everyone out of the vehicle."

At this point, the driver of the Blazer endeavored to flee the parking lot, seemingly without regard for persons and vehicles in its path. The agents on the scene began firing at the Blazer. The Blazer nearly hit two different agents; then the Blazer paused momentarily at a chain-link fence, behind which sat two U.S. Marshal vehicles blocking the Blazer's path. The Blazer's occupants were again instructed to stop and to get out of the vehicle; instead, the Blazer repeatedly rammed the fence, finally breaking through and ramming the Deputy Marshals' cars.

The Blazer eventually ran aground on a stump; its occupants were apprehended and arrested. A search of the car revealed a briefcase containing a pipe bomb. Gonzalez made post-arrest statements indicating that he knew he was wanted by the police. Three days later, Deputy Marshal Godsk revisited the Blazer at the impound lot and searched the vehicle. When Godsk removed the cup holder from the console, he discovered a Glock pistol.

A grand jury indicted Gonzalez for (1) forcibly assaulting three United States Marshals by use of a dangerous weapon (the Blazer); (2) knowingly carrying a destructive device in relation to a crime of violence; (3) possessing a firearm while a fugitive from justice, and (4) knowingly possessing a destructive device not registered to him.

Gonzalez pled not guilty, and his case was tried to a jury. Gonzalez was found guilty by the jury on all counts and appealed.

*Discussion*[1]

---

[1]In addition to the challenges to his convictions discussed in our opinion, Gonzalez also raises two other points that we can address summarily. First, Gonzalez argues that the district court erred in allowing the government to present testimony about Olga Capon's (a known associate of

A. *Sufficiency of the Evidence*

Gonzalez challenges several of his convictions on the ground that the government's evidence was insufficient to establish the offenses charged. Sufficiency of the evidence is a question of law, reviewed *de novo;* evidence is sufficient if "viewed in the light most favorable to the government, the jury could have found defendant guilty beyond a reasonable doubt." *United States v. Farris,* 77 F.3d 391, 394 (11th Cir.1996). The evidence need not "exclude every reasonable hypothesis of innocence." *Id.* at 395.

1. *Forcible Assault of a U.S. Marshal and Carrying a Destructive Device During and In Relation to the Assault*

Section 111 of Title 18 provides, in pertinent part:

Whoever forcibly assaults, resists, opposes, impedes, intimidates, or interferes with [a U.S. Marshal] while engaged in or on account of the performance of his official duties ... shall be fined under this title or imprisoned not more than three years, or both.

The attempted or threatened injury must be "an intentional act wilfully done without legal excuse." *Burke v. United States,* 400 F.2d 866, 867 (5th Cir.1968) Gonzalez argues that the evidence does not establish that he intentionally directed force at the three officers he allegedly tried to assault with his Blazer. Instead, Gonzalez argues that the evidence is just as consistent with his contention (made at trial) that he was "simply driving, head down, attempting to flee."

---

Gonzalez) arrest and about her passenger flashing a gun at Agent McDermott. We conclude that the district court did not abuse its discretion in admitting this evidence.

Second, Gonzalez contends that the district court erred in denying his motion to suppress his post-arrest statements and evidence seized from the Blazer because agents lacked probable cause to believe that he was in the vehicle when they attempted to stop it. The government argues that the marshals' stop of the Blazer was justified as a *Terry* stop for the purpose of determining whether Gonzalez was the driver, and that this reasonable suspicion ripened into probable cause when Gonzalez attempted to flee and to assault the marshals with the Blazer.

Gonzalez's contention is refuted by the evidence: There were many reasons for the officers to suspect both that Gonzalez was at the Princess Motel and that he was driving a red Blazer. Also, one of the agents positively identified Gonzalez when the Blazer stopped during the attempted flight. To say the least, the officers had probable cause at that point to arrest Gonzalez; the evidence and post-arrest statements were admissible. *United States v. Blackman,* 66 F.3d 1572 (11th Cir.1995).

3

The three U.S. Marshals—McDermott, Moran, and Thornall—that Gonzalez allegedly assaulted with the vehicle each testified in detail about the circumstances that led them to think that the Blazer's driver intentionally tried to hit them in his attempt to flee the parking garage. Based on these officers' testimony, a reasonable jury could easily conclude that Gonzalez's acts in driving the Blazer at the marshals were intentional. The evidence, therefore, was sufficient to support this conviction. *See United States v. Martin,* 961 F.2d 161, 163 (11th Cir.1992).

Gonzalez also contends that the evidence was insufficient to support his 18 U.S.C. § 924(c) conviction for using or carrying a destructive device during and in relation to a crime of violence (the assault). He argues that the destructive device—here, a pipe bomb—was merely present in the Blazer, not used *in relation to* the assault on the marshals. Gonzalez points to the lack of fingerprints found on the bomb, the location of the pipe bomb inside a briefcase wedged underneath the passenger seat of the Blazer, the fact that no witnesses saw the bomb until after the assault had ended, and the conflicting testimony on whether anyone had seen Gonzalez reaching toward the briefcase in the Blazer.

At least one marshal—Godsk—testified, however, that when the Blazer stopped, Gonzalez seemed to reach to his right "as though he was [*sic* ] attempting to get something with his right hand...." This evidence, combined with the pipe bomb's location in the Blazer, was sufficient for the jury to infer that Gonzalez was reaching for the pipe bomb, thus carrying it "in relation to" the assault.

2. *Fugitive in Possession of a Firearm*

Gonzalez argues that the evidence proffered in support of his conviction under 18 U.S.C. § 922(g)(2) for being a fugitive in possession of a firearm failed to prove that he was either: (1) a "fugitive" as defined by the statute, or (2) that he knowingly possessed the gun.

The term "fugitive from justice" is defined in 18 U.S.C. § 921(a)(15) as "any person who has fled from any state to avoid prosecution for a crime or to avoid giving testimony in any criminal proceeding." Gonzalez argues that, although he was indicted in Puerto Rico on federal drug charges,

4

the government produced no evidence that he fled to the State of Florida. He contends that, because he need not have been physically present in Puerto Rico to have committed the alleged crimes, the indictment alone cannot support a finding that he was ever outside of Florida.

The government responds that "Gonzalez's argument misses the mark because the relevant inquiry is whether Gonzalez purposely stayed away from Puerto Rico to avoid the charges pending against him." For support, the government cites *United States v. Fonseca-Machado,* 53 F.3d 1242, 1243-44 (11th Cir.1995), in which we stated that "[m]ere absence from the jurisdiction in which a crime occurred does not render the suspect a fugitive from justice; he must be found to have absented himself from the jurisdiction with the intent to avoid prosecution."

Here, the evidence was insufficient to allow a reasonable jury to conclude that Gonzalez was ever in Puerto Rico, much less that he intentionally absented himself—that is, took himself away—from Puerto Rico to avoid prosecution there. In fact, the government was unable to produce evidence that Gonzalez had ever been in Puerto Rico or, for that matter, had been outside of Florida during the pertinent time. Gonzalez, therefore, does not meet the statutory definition of "fugitive"; his conviction under 18 U.S.C. § 922(g)(2) is reversed.

3. *Possession of an Unregistered Destructive Device*

Gonzalez also argues that his conviction for possession of an unregistered destructive device under 26 U.S.C. § 5861(d) is based on insufficient evidence. He says the government failed to prove that the pipe bomb was unregistered in the National Firearms Registration and Transfer Record. Gonzalez's contention is that the records search conducted by the government only searched for registration in Gonzalez's name and in five of his seven known aliases. The defendant argues that omission of two aliases rendered the search unreliable and inadmissible; it demonstrated lack of due diligence.[2] His contention, however, is meritless. Gonzalez has cited no statute or case—and we

---

[2]The government argues that Gonzalez failed to object to the certificate of nonregistration from the National Firearms Registration and Transfer of Records search on the grounds of lack of completeness and failed to cross-examine the agent who conducted the search concerning the deficiencies, thereby waiving this claim. The defendant, however, did object to the certificate on grounds of "hearsay, denies confrontation, no proper predicate, no indicia of reliability." This

5

are aware of none—that requires the government to do more than conduct a records search under a defendant's legal name to establish (for the purpose of sufficiency-of-evidence review) the unregistered nature of his firearm. And in this case, the government showed more: several aliases were also checked. Gonzalez's conviction on this charge is supported by sufficient evidence.

B. *Jury Instructions*

Gonzalez next contends that he should receive a new trial because the jury instructions were deficient. He alleges three deficiencies in the jury instructions: (1) that the district court failed to instruct on obstructing, resisting or opposing a federal officer in the service of process under 18 U.S.C. § 1501,[3] which Gonzalez argues is a lesser included offense of 18 U.S.C. § 111;[4] (2) that the

objection was sufficient to preserve the present objection.

[3]Section 1501 provides, in pertinent part:

> Whoever knowingly and willfully obstructs, resists, or opposes any officer of the United States, or other person duly authorized, in serving, or attempting to serve or execute, any legal or judicial writ or process of any court of the United States, or United States commissioner; or
>
> Whoever assaults, beats, or wounds any officer or other person duly authorized, knowing him to be such officer, or other person so duly authorized, in serving or executing any such writ, rule, order, process, warrant, or other legal or judicial writ or process—
>
> Shall, except as otherwise provided by law, be fined under this title or imprisoned not more than one year, or both.

[4]Section 111 states, in pertinent part:

> (a) In general.—Whoever—
>
> > (1) forcibly assaults, resists, opposes, impedes, intimidates, or interferes with any person designated in section 1114 of this title [including U.S. Marshals] while engaged in or on account of the performance of official duties ... shall, where the acts in violation of this section constitute only simple assault, be fined under this title or imprisoned not more than one year, or both, and in all other cases, be fined under this title or imprisoned not more than three years, or both.
>
> (b) Enhanced penalty.—Whoever, in the commission of any acts described in subsection (a), uses a deadly or dangerous weapon (including a weapon intended to cause death or danger but that fails to do so by reason of a defective component) or inflicts bodily injury, shall be fined under this title or imprisoned

district court failed to instruct the jury that its verdict on the assault of federal marshals charge must be unanimous; and (3) that the district court failed to instruct on the defense's theory of self-defense.

The district court's refusal to deliver requested instructions constitutes reversible error only if (1) the requested instruction is correct, (2) it is not substantially covered by other instructions delivered, and (3) the proposed instruction is so vital that failure to give the requested instruction seriously impaired the defendant's ability to defend. *United States v. Opdahl,* 930 F.2d 1530, 1533 (11th Cir.1991).

The district court refused the defendant's request to charge on 18 U.S.C. § 1501 as a lesser included offense of section 111. The Supreme Court in *Sansone v. United States,* 380 U.S. 343, 348-50, 85 S.Ct. 1004, 1009, 13 L.Ed.2d 882 (1965), developed a framework for analyzing whether a lesser included offense charge was required:

> [I]n a case where some of the elements of the crime charged themselves constitute a lesser crime, the defendant, if the evidence justifies it ... is entitled to an instruction which would permit a finding of guilt of a lesser offense. But a lesser-offense charge is not proper where, on the evidence presented, the factual issues to be resolved by the jury are the same as to both the lesser and the greater offenses ... A lesser-included offense instruction is only proper where the charged greater offense requires the jury to find a disputed factual element which is not required for conviction of the lesser-included offense.

*Id.* (internal quotation marks and citations omitted).

Here, the element of force was required for a conviction under section 111 but not for conviction under section 1501. This element (force) was disputed by Gonzalez. Under *Sansone,* then, the jury should have been instructed on section 1501 as a lesser included offense. *Cf. United States v. Giampino,* 680 F.2d 898, 901 (2d Cir.1982) ("There is no dispute that a § 1501 offense was "included' in the § 111 offense. Every element required to establish [the defendant's] obstruction of [the federal agent] in violation of § 1501 was also essential for establishment of [the defendant's] guilt under § 111. Thus, if the prosecution proved a violation of § 111, it necessarily also proved a violation of § 1501."). We vacate Gonzalez's conviction under section 111 and remand it for a new trial.

---

not more than ten years, or both.

Also, because Gonzalez's section 111 conviction served as the underlying "crime of violence" for Gonzalez's conviction for use or carrying a destructive device during and in relation to a crime of violence, Gonzalez's section 924(c) conviction must also be vacated and remanded for another trial.

Finally, because we reverse these convictions and remand for new trial due to the lack of a lesser included offense instruction, the district court's other alleged instructional deficiencies—even if meritorious—could not afford Gonzalez any greater relief. We need not, therefore, decide those issues.[5]

C. *Prosecutorial Misconduct*

Gonzalez alleges that instances of prosecutorial misconduct necessitated a mistrial. Depending on the circumstances, a mistrial could have barred further prosecution. *United States v. Crouch,* 566 F.2d 1311, 1317 (5th Cir.1978) (holding double jeopardy bars retrial when prosecutorial misconduct forces defendant to move for mistrial). Therefore, we address the mistrial issue, although one of Gonzalez's convictions has already been reversed and a new trial has been ordered by us on two of Gonzalez's other convictions. First, Gonzalez points to the prosecutor's attempt to question the marshals about whether they had ever fired their weapons before in the

---

[5]We note, however, that neither of the other two alleged instruction errors were likely to afford Gonzalez relief. First, about the unanimity instruction, Gonzalez failed to object at trial to the absence of an unanimity instruction; therefore, we review only for plain error. The Supreme Court has laid out a three-part analysis for plain error: (1) there must be error; (2) it must be plain; and (3) the error must affect substantial rights. *United States v. Olano,* 507 U.S. 725, 730-32, 113 S.Ct. 1770, 1775-77, 123 L.Ed.2d 508 (1993).

Here, Gonzalez cannot show that his challenge to the unanimity instruction would have merit on any basis, much less the plain error standard of *Olano.* The judge specifically instructed the jury that the verdict must be unanimous. Gonzalez's proposed unanimity instruction, therefore, was substantially covered by the other instructions delivered by the district court judge.

Second, about the district court's refusal to give Gonzalez's proposed theory of defense instruction—that the use of force was justified to protect himself against the officers' use of excessive force, the proposed instruction is not contained in the record; our review of it is therefore precluded. *See United States v. Diaz,* 916 F.2d 655, 658 (11th Cir.1990) (holding absence of proposed instruction from record alone warrants affirmance on challenge to failure to give instruction).

8

course of their duties and about why the marshals had so much fire power at the hotel when they went to arrest Gonzalez. Second, Gonzalez points to the prosecutor's closing argument, in which the prosecutor mentioned Gonzalez's "personal war with the United States" and in which the prosecutor asserted facts not established by the evidence.[6]

"To find prosecutorial misconduct, a two-pronged test must be met: (1) the remarks must be improper, and (2) the remarks must prejudicially affect the substantial rights of the defendant." *United States v. Eyster,* 948 F.2d 1196, 1206 (11th Cir.1991). That the pertinent remarks of the prosecutor were improper is undisputed; the sole issue, then, is whether they substantially affected Gonzalez's rights. "[C]onsiderable weight to the district court's assessment of the prejudicial effect of the prosecutor's remarks and conduct" must be given. *United States v. Herring,* 955 F.2d 703, 710 (11th Cir.1992).

Here, the district court properly concluded that Gonzalez has shown no substantial prejudice. First, Gonzalez's objections to the prosecutor's questioning of the marshals were sustained by the district court judge. Second, the judge gave a curative instruction, stating:

> Well, ladies and gentlemen, the arguments of counsel are just that. They are arguments. They are not evidence. they have nothing to do with the facts of the case as you determine it. So, I'm going to instruct you to base your decisions on the evidence as you decide the facts.

For the prosecutor's misstatements about the identification of the cousin, the fingerprints on the briefcase, and Gonzalez's flight from Puerto Rico, Gonzalez failed to object to these comments. So review of these remarks is limited to the plain error standard—a standard he cannot meet. Also, if error occurred, it was cured by the district court in this case; the district court instructed the jury—at least twice—that the prosecutor's arguments were not evidence and that the jury was to decide Gonzalez's guilt based solely on the evidence. As the government noted, "the district court either admonished the prosecutor, sustained Gonzalez's objection, offered a curative instruction to

---

[6]In his closing argument, the prosecutor identified the passenger in Olga Capon's car as Gonzalez's cousin, argued that Gonzalez's fingerprints were found on the pipe bomb, and asserted that Gonzalez had fled to Puerto Rico. None of these "facts" were established by the evidence presented to the jury.

the jury, or responded to the error with some combination of these actions." Viewing the record in its entirety, the prosecutor's conduct did not demand a mistrial; and no reversible error has been shown.

*Conclusion*

In sum, we reverse Gonzalez's conviction for possession of a firearm while a fugitive from justice; Gonzalez is now entitled to acquittal on this charge. We vacate and remand for retrial Gonzalez's convictions for forcibly assaulting U.S. Marshals by use of a dangerous weapon and for knowingly carrying a destructive device in relation to a crime of violence. Finally, we conclude that the district court committed no other reversible error and affirm Gonzalez's conviction for knowingly possessing a destructive device not registered to him.

AFFIRMED IN PART, REVERSED IN PART, VACATED AND REMANDED IN PART.