[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 18-13182

_____

D.C. Docket No. 1:16-cr-00401-MHC-JFK-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

SHUSTA TRAVERSE GUMBS,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia

_____

(July 15, 2020)

Before WILLIAM PRYOR, Chief Judge, JILL PRYOR and LUCK, Circuit Judges.

LUCK, Circuit Judge:

Shusta Traverse Gumbs was a fugitive with an outstanding warrant for his arrest.  Sitting in his car, surrounded by task force officers with the U.S. Marshals Service ready to take him into custody, Gumbs stomped on his gas pedal, struck one officer and just missed three others.  But his escape was short lived.  The officers caught up with Gumbs days later.  He was charged with, tried for, and convicted of two counts of using a deadly weapon to forcibly assault, resist, oppose, impede, intimidate, or interfere with a federal officer.  Gumbs argues that we should reverse his conviction because the district court refused to give his proposed instructions defining "forcibly" and use of a deadly weapon, failed to instruct the jury on the lesser included offense of simple assault, gave the wrong answer to the jury's question during deliberations, and erred in denying his motion for judgment of acquittal on count two.  We affirm.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Gumbs was a fugitive with an outstanding arrest warrant out of Douglas County, Georgia, for failing to appear in court on charges of possession of a firearm by a convicted felon and theft by receiving and possession of less than an ounce of marijuana.  A seven-member task force working with the United States Marshals Service was assigned to find Gumbs and arrest him.  On October 21, 2016, Officer Walker Ralston spotted Gumbs sitting inside his car in a small, fenced-in Atlanta parking lot.  The lot had only one opening for entering and exiting from the street.

2

Officer Ralston radioed the other task-force members that he saw Gumbs in the parking lot.

Officer Bryant Hill got there first. Officer Hill pulled around Gumbs's car and parked behind it so Gumbs could not back out. Officer Jeffrey Stevens, riding with Officer Ralston and Officer Christopher Baker, arrived next. Officer Stevens parked his van in front of Gumbs to block the exit, and he activated his blue lights. Officer Stevens, Officer Ralston, and Officer Baker then got out of the van and approached Gumbs with their guns drawn; the officers announced themselves as law enforcement and told Gumbs to park his car, show his hands, and surrender. Officer Hill got out of his car and joined the others. All the officers were wearing vests that said they were law enforcement.

Gumbs initially tried to back out but stopped because Officer Hill's car was in the way. Inspector Frank Lempka then arrived with Deputy David Siler. Inspector Lempka parked his car, with his blue lights activated, perpendicular to Officer Stevens's van to further block the exit. This trial exhibit shows where the cars were at that point:[1]

---

[1] The box with a single opening is the parking lot. Gumbs's car is the one marked "G." Officer Hill's car is marked "H." Officer Stevens's van is marked "S." And Inspector Lempka's car is marked "L."



Inspector Lempka and Deputy Siler got out of their car and went toward the driver's side of Gumbs's car, stopping a few feet behind the four other officers (Officers Stevens, Ralston, Baker, and Hill). Gumbs's window was partially down, and the officers were yelling at him that they were police and to park the car and get out. Gumbs was sitting in his car, which was running and, the officers believed, in drive.

Inspector Lempka ran back to his car to get a baton to break open Gumbs's windows. Meanwhile, Officer Ralston and Officer Stevens reached into Gumbs's car through his driver's side window. As the officers were reaching in, Gumbs slammed on the gas and the car accelerated. Right then, Inspector Lempka was running between his car and Officer Stevens's car toward Gumbs. Gumbs hit both cars as he sped off and struck Inspector Lempka. He did not even slow down as he

4

pinned Inspector Lempka between the cars. Inspector Eric Heinze was the last to arrive and was pulling into the parking lot as Gumbs was driving away. Gumbs hit Inspector Heinze's car, and Inspector Heinze chased Gumbs as he fled. Gumbs went on to hit a civilian car before eventually abandoning his car and escaping on foot.

When Gumbs slammed on the gas: Officers Baker, Stevens, and Ralston were within a foot of Gumbs's driver's side window, close enough to reach into Gumbs's car to arrest him; Officer Hill was near them but was standing more toward the back of the car in a less vulnerable position; and Deputy Siler was about five feet from the car, further away than the others. Inspector Heinze was still in his car when Gumbs sped off.

Both of Inspector Lempka's legs were injured in the incident, and his right ankle and foot were severely sprained. Inspector Lempka also suffered injuries to his head resulting in a black eye and a large bump on his brow.

Gumbs was arrested four days later. Soon after, Gumbs was indicted for two counts of using a deadly weapon to forcibly assault, resist, oppose, impede, intimidate, or interfere with a federal officer, in violation of 18 U.S.C. § 111(a)(1) and (b).[2] Count one charged Gumbs with hitting Inspector Lempka. Count two

---

[2] The statute, 18 U.S.C. § 111, reads in full:

(a) IN GENERAL.—Whoever—

charged Gumbs with forcibly assaulting, resisting, opposing, impeding, and interfering with the six other officers who were next to the car as Gumbs was speeding away from the parking lot.

The case was tried in front of a jury over six days in December 2017. At the end of the government's case, Gumbs moved for judgment of acquittal. As to count two, Gumbs argued there was no evidence he acted in a threatening way toward the officers standing next to his car, although he admitted his argument was weaker with respect to the officers "closest" to his car. The district court denied Gumbs's motion.

In his closing argument, Gumbs admitted he hit Inspector Lempka but claimed it was an accident. Gumbs argued that the evidence suggested he had used the car

---

(1) forcibly assaults, resists, opposes, impedes, intimidates, or interferes with any person designated in section 1114 of this title while engaged in or on account of the performance of official duties; or

(2) forcibly assaults or intimidates any person who formerly served as a person designated in section 1114 on account of the performance of official duties during such person's term of service,

shall, where the acts in violation of this section constitute only simple assault, be fined under this title or imprisoned not more than one year, or both, and where such acts involve physical contact with the victim of that assault or the intent to commit another felony, be fined under this title or imprisoned not more than 8 years, or both.

(b) ENHANCED PENALTY.—Whoever, in the commission of any acts described in subsection (a), uses a deadly or dangerous weapon (including a weapon intended to cause death or danger but that fails to do so by reason of a defective component) or inflicts bodily injury, shall be fined under this title or imprisoned not more than 20 years, or both.

to flee rather than as a deadly weapon.  Gumbs acknowledged he resisted, opposed, and impeded the officers to evade arrest, but he maintained he did not do so forcibly.

At the charge conference, Gumbs requested a special jury instruction for the term "forcibly":

> To act "forcibly" means to use physical force or threats of force. "Threats of force" means threats of bodily harm.  To forcibly assault, resist, oppose, impede or interfere with a federal officer, the Defendant must use or attempt to use physical force against the officer or threaten in some way to do bodily harm to the officer.

Gumbs also requested a special instruction regarding the use of a deadly weapon:

> A motor vehicle is a dangerous or deadly weapon if it is used in a way that is capable of causing death or serious bodily injury.  For a car to qualify as a deadly or dangerous weapon, the defendant must use it as a deadly or dangerous weapon and not simply as a mode of transportation.
>
> To show that a weapon was "used," the Government must prove that it was actively employed in some way to further or advance the forcible assault, resistance, opposition, impeding or interference with a federal officer.  "Use" can occur through intentionally displaying a weapon during the course of forcibly assaulting, resisting, opposing, impeding or interfering.

Finally, Gumbs requested that the jury be instructed on the lesser included offense of simple assault under 18 U.S.C. § 111(a).  The district court denied Gumbs's requested instructions except for the first sentence of his proposed use-of-a-deadly-weapon instruction.  In relevant part, the court instructed the jury:

> It is a federal crime to forcibly assault, resist, oppose, impede or interfere with a federal officer using a deadly or dangerous weapon or inflicting body injury while the officer is performing official duties.

7

In this case the defendant can be found guilty of this crime only if all the following facts are proved beyond a reasonable doubt:

One, the defendant knowingly and willfully forcibly assaulted, resisted, opposed, impeded or interfered with the person described in the superseding indictment;

Two, the person forcibly assaulted, resisted, opposed, impeded or interfered with a federal officer performing an official duty; and,

Three, the defendant used a deadly or dangerous weapon or inflicted bodily injury.

A forcible assault is an intentional threat or attempt to cause serious bodily injury when the ability to do so is apparent and immediate. It includes any intentional display of force that would cause a reasonable person to expect immediate and serious bodily harm or death.

. . . .

A dangerous or deadly weapon means any object that can cause death or present a danger of serious bodily injury.

A weapon intended to cause death or present a danger of serious bodily injury, but that fails to do so by reason of a defective component, still qualifies as a deadly or dangerous weapon.

A motor vehicle is a deadly or dangerous weapon if it is used in a way that is capable of causing death or serious bodily injury.

Though a forcible assault requires an intentional threat or attempt to inflict serious bodily injuries, the threat or attempt does not have to be carried out and the victim does not have to be injured.

. . . .

The words knowingly and willfully as those terms are used in the superceding [sic] indictment mean that the act was committed

8

voluntarily and not because of mistake or by accident.

During deliberations, the jury asked the district court whether a car is "still a deadly weapon if you don't intend to use it that way." The district court proposed to respond to the jury's question by repeating the deadly-weapon instructions it gave earlier, but Gumbs argued the court should simply answer "no." When the district court disagreed with Gumbs's response, Gumbs requested that it at least reiterate the knowing-and-willful instruction too. The district court rejected Gumbs's argument and repeated its prior deadly-weapon instructions.

The jury found Gumbs guilty on counts one (hitting Inspector Lempka) and two (but only as to the three officers—Officers Baker, Stevens, and Ralston— standing closest to Gumbs's car when he sped off). Gumbs was sentenced to 235 months in prison followed by three years of supervised release.

## DISCUSSION

Gumbs appeals the district court's refusal to give his requested jury instructions, the district court's response to the jury's question, and the denial of his motion for judgment of acquittal on count two of the indictment. We address each issue below.

### Jury Instructions

"We review a district court's refusal to give a requested jury instruction for abuse of discretion." United States v. Carrasco, 381 F.3d 1237, 1242 (11th Cir.

2004).  A district court abuses its discretion if "the requested instruction was a correct statement of the law," the "subject matter [of the instruction] was not substantially covered by other instructions," and the instruction "dealt with an issue in the trial court that was so important that failure to give it seriously impaired the defendant's ability to defend himself."  Id. (quoting United States v. Paradies, 98 F.3d 1266, 1286 (11th Cir. 1996)).  Gumbs argues the district court abused its discretion in refusing to give his proposed instructions on (1) the term "forcibly," (2) the use of a deadly weapon, and (3) a lesser included offense.

*The "Forcibly" Instruction*

The district court refused to give Gumbs's proposed jury instruction on the term "forcibly."  Gumbs argues this was an abuse of discretion because "[t]he jury was not instructed that 'forcibly' means the intentional use or threatened use of physical force against the officer and that every means of violating § 111 requires such force."  We see no abuse of discretion in refusing to give Gumbs's proposed instruction because its subject matter was substantially covered by other instructions. See Paradies, 98 F.3d at 1286.

The district court instructed the jury that the government had to prove beyond a reasonable doubt that Gumbs "forcibly assaulted, resisted, opposed, impeded or interfered with" Officers Baker, Stevens, and Ralston.  The jury was also instructed that a forcible assault "includes any intentional display of force."  There was no need

10

to do more.  The district court's instruction tracked the language of § 111.  That alone, we've said, leaves "little danger of prejudice."  United States v. Martin, 704 F.2d 515, 518 (11th Cir. 1983).  This is especially so where, as here, the tracked language has a "generally understood meaning."  See id. (quoting C. Wright, 2 Federal Practice and Procedure: Criminal 2d § 485, at 711–12 (1982)).  In rejecting the same argument on plain-error review in United States v. Hightower, 512 F.2d 60, 62 (5th Cir. 1975),[3] our predecessor court explained that the language of § 111, including the word "forcibly," "is understandable to the man on the street and needs no elaboration."  Id.; see also United States v. Fernandez, 837 F.2d 1031, 1035 (11th Cir. 1988) ("The word 'forcibly' in section 111 means only that some amount of force must be used.").

The district court did not need to tell the jury that "forcibly" modified "assaulted, resisted, opposed, impeded or interfered."  As a matter of grade-school grammar, the adverb "forcibly" necessarily modifies each of the listed verbs that follows it.  See, e.g., Long v. United States, 199 F.2d 717, 719 (4th Cir. 1952) (explaining that, under "ordinary rules of grammatical construction," the "use of the adverb 'forcibly' before the first of the string of verbs, with the disjunctive conjunction used only between the last two of them, shows quite plainly that the

---

[3] All decisions of the former Fifth Circuit announced before October 1, 1981, are binding precedent in the Eleventh Circuit.  Bonner v. City of Prichard, 661 F.2d 1206, 1208–09 (11th Cir. 1981) (en banc).

11

adverb is to be interpreted as modifying them all"); see also Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts § 19, at 147–51 (2012) (describing the series-qualifier canon). Assuming that jurors understand the rules of grammar is not an abuse of discretion.

*The "Use of a Deadly Weapon" Instruction*

The district court gave only the first sentence of Gumbs's proposed instruction regarding the use of a deadly weapon. Gumbs argues the district court erred in not giving the jury the whole thing. Again, we conclude that the district court did not abuse its discretion because the rest of the instruction was substantially covered by other instructions and the failure to give it did not seriously impair Gumbs's defense. For that reason, we need not decide whether Gumbs failed to preserve his objection to this instruction, such that the more stringent standard of review for plain error would apply.

The district court, as Gumbs requested, instructed the jury that a "motor vehicle is a deadly or dangerous weapon if it is used in a way that is capable of causing death or serious bodily injury." Having given this instruction, the district court did not need to read the second sentence that, "[f]or a car to qualify as a deadly or dangerous weapon, the defendant must use it as a deadly or dangerous weapon and not simply as a mode of transportation." The second sentence is essentially the inverse of, and covered by, the first. To the extent that Gumbs believes this sentence

12

was necessary to convey that the jury could not convict unless he intended to use the car as a weapon, that would be a misstatement of the law. We have held that § 111 is a statute of general intent, so Gumbs needed only to intend to use the car. See United States v. Ettinger, 344 F.3d 1149, 1161 (11th Cir. 2003). He did not need to intend to use the car as a weapon. See 18 U.S.C. § 111(b) (requiring only that the defendant "use[] a deadly or dangerous weapon").

The rest of the proposed instruction was likewise covered because the court clearly instructed the jury that Gumbs could not be found guilty unless he "used a deadly or dangerous weapon." Gumbs complains the district court didn't define "use" specifically enough. But "[i]t is well settled that a court need not define terms that are not unduly technical or ambiguous or that are within the common understanding of the jury." United States v. Pepe, 747 F.2d 632, 674 n.78 (11th Cir. 1984). For example, we've held that "distribute," United States v. Lignarolo, 770 F.2d 971, 980 (11th Cir. 1985), "producing," United States v. Smith, 459 F.3d 1276, 1297–98 (11th Cir. 2006), and "kickback," United States v. Gonzalez, 834 F.3d 1206, 1225–26 (11th Cir. 2016), have common meanings that were readily understood by jurors and did not need to be defined. "Use," as used in § 111, is even more common and readily understood, and for the same reasons we held in Lignarolo, Smith, and Gonzalez, the district court did not need to give the separate definition proposed by Gumbs.

13

Finally, not defining "use" did not seriously impair Gumbs's defense.  Gumbs was able to, and did, argue to the jury that he used the car to flee and not as a deadly weapon.  (DE 178 at 184) ("[T]here is no evidence in this case that Mr. Gumbs ever made the decision to actually use that car as a deadly weapon.  His intent was to use the car to go out the gate.").  We know the jury understood and considered Gumbs's flight defense based on the jury's question.

*The Lesser Included Offense Instruction*

Gumbs requested that the jury be given the option of finding him guilty of the lesser included offense of simple assault under 18 U.S.C. § 111(a).  A criminal defendant "is only entitled to [a] lesser included offense instruction if the evidence would permit a rational jury to find him guilty of the lesser offense and not the greater."  United States v. Catchings, 922 F.2d 777, 780 (11th Cir. 1991).  "[A] lesser-offense charge is not proper where, on the evidence presented, the factual issues to be resolved by the jury are the same as to both the lesser and greater offenses."  Sansone v. United States, 380 U.S. 343, 349–50 (1965).  "In other words, the lesser offense must be included within but not, on the facts of the case, be completely encompassed by the greater."  Id. at 350.

A simple assault is a violation of § 111(a) that does not involve physical contact or the intent to commit another felony.  See United States v. Siler, 734 F.3d 1290, 1296–97 (11th Cir. 2013) (delineating the "three separate crimes" created by

14

§ 111).  The elements of § 111(a) and § 111(b) are essentially the same, except that subsection (b) imposes an enhanced penalty for using a "deadly or dangerous weapon" or inflicting "bodily injury."

We agree with the district court that if the jury were to find the elements of simple assault, then it would also have to find the elements of forcible assault with a deadly weapon.  There is no way a rational jury could find Gumbs guilty of simple assault but not forcible assault with a deadly weapon, because the only action that could form the basis of an assault was Gumbs's gunning his car.  The jury could not give Gumbs half a loaf under these facts; either he was guilty of the charged offense or not guilty at all.

The D.C. Circuit reached the same conclusion in United States v. Arrington, 309 F.3d 40 (D.C. Cir. 2002).  There, the defendant admitted "that the evidence was sufficient to satisfy the requirements of § 111(a)," but he contended that "it did not meet the additional requirements of § 111(b)" because, "[i]n his view, the evidence 'established no more than that [he] used his car to try to flee from the officers.'"  Id. at 48 (second alteration in original).  On appeal, the court said the defendant's admission of liability under § 111(a) was "inconsistent with [his] 'mere flight' theory" because a defendant cannot be guilty under § 111(a) without committing one or more of the prohibited acts "forcibly."  Id. at 48 n.17.  That is, the defendant could not have been guilty of violating § 111(a) yet innocent of violating § 111(b), because

15

in both cases the defendant must have acted "forcibly," and the only forcible act the defendant committed was his taking off in his car while officers had reached in and grabbed ahold of him. See id. at 48 n.17, 49.

Gumbs could not have been guilty of simple assault yet innocent of using a deadly weapon, because the only assault he committed was his speeding away in his car. If there was evidence of other assaults not involving the use of a deadly weapon—for instance, if Gumbs had tried to slap one of the officers' hands as the officer was reaching into the car—then it may have been appropriate to instruct the jury on a lesser included offense as to that separate act. But there is no such evidence here. As in Arrington, the only assault Gumbs committed was using his car to pin and strike an officer, which would have been sufficient for the jury to find him guilty of both simple assault under § 111(a) and assault with a deadly weapon under § 111(b). Accordingly, the district court did not abuse its discretion in refusing Gumbs's lesser included offense instruction.

The District Court's Response to the Jury's Question

During deliberations, the jury asked the district court whether a car is "still a deadly weapon if you don't intend to use it that way." Gumbs argued that the court should simply answer "no" or should reiterate its knowing-and-willful instruction, but the court instead chose to repeat only its prior instructions regarding the use of a deadly weapon. Gumbs argues that the district court's response was an abuse of

16

discretion because it "did not address the jury's question on mens rea required for use of a car as [a] dangerous or deadly weapon."

"When a jury requests supplemental instruction, a district court should answer within the specific limits of the question presented and resolve the jury's difficulties with concrete accuracy." United States v. Joyner, 882 F.3d 1369, 1375 (11th Cir. 2018) (citation and quotation marks omitted). "District courts have considerable discretion regarding the extent and character of supplemental jury instructions, but the supplemental instructions cannot misstate the law or confuse the jury." Id. "To determine whether the jury was misled or confused, we review supplemental jury instructions as part of the entire jury charge and in light of the indictment, evidence presented, and arguments of counsel." Id.

Here, the supplemental instruction neither confused the jury nor misstated the law. That it was not confusing is obvious enough—the district court simply reread the relevant portions of the jury instructions. See id. at 1375–77 (rejecting claim that district court's supplemental instruction was confusing where the court in large part referred the jury back to the relevant portions of its earlier instructions). And the district court's response clearly did not misstate the law. Section 111 "is a general intent statute." Ettinger, 344 F.3d at 1161. "[T]here is no need under § 111 to show specific intent . . . ." See id. at 1160. Thus, a defendant need not specifically intend to use a car as a deadly weapon to violate § 111(b). See Arrington, 309 F.3d

17

at 45–46. The defendant must simply intend to "use the object that constitutes the deadly weapon." Id. at 46. In other words, the defendant must use the car in such a manner that it is "capable of causing serious bodily injury or death to another person." See id. at 45–46. The district court's response correctly stated this principle of law.

### The Sufficiency of the Evidence as to Count Two

Gumbs argues that the evidence was insufficient to support his conviction on count two of the indictment because there was no evidence he directed force at the officers next to his car or used his car as a weapon against them. Gumbs does not challenge the sufficiency of the evidence as to count one. "We review challenges to the sufficiency of the evidence de novo" and ask "whether a reasonable jury could have found the defendant guilty beyond a reasonable doubt." United States v. Mercer, 541 F.3d 1070, 1074 (11th Cir. 2008). We view all evidence in the light most favorable to the government, drawing all reasonable inferences in its favor. Id.

The evidence clearly shows that Gumbs obstructed and resisted the officers who stood near his car at the time of the incident. Gumbs admitted as much at trial.[4] The officers went to the parking lot to arrest Gumbs; they yelled at him to stop the

---

[4] In arguing his motion for judgment of acquittal outside the presence of the jury, Gumbs conceded that "the evidence . . . show[ed] that" he "attempted to resist [the officers'] efforts to arrest him." Nonetheless, Gumbs argued for acquittal because he believed his actions were not "forcible." Gumbs said the same thing during closing arguments. (DE 178 at 186) ("This is not a forceable resistance, a forcible impeding. This is a resisting, opposing, impeding, yes. In the sense that he evaded arrest. But that's not what the government wants. They want more than that.").

car and get out.  Right when they were about to arrest Gumbs, literally reaching into the car to grab ahold of him, Gumbs sped off.  Moreover, the evidence supports a finding that Gumbs did so with "some amount of force."  See Fernandez, 837 F.2d at 1035 ("The word 'forcibly' in section 111 means only that some amount of force must be used.").  Officers were standing within a foot of Gumbs's car, reaching into the car, when he stepped on the gas pedal and sped off.  We have held similar evidence to be sufficient for purposes of a § 111(b) conviction.  See United States v. Gonzalez, 122 F.3d 1383, 1385–86 (11th Cir. 1997).  In Gonzalez, for instance, police yelled at the defendant to get out of his car as he was trying to leave a parking lot.  Id. at 1385.  The defendant continued to flee, "seemingly without regard for persons and vehicles in [his] path," nearly hitting two police officers in the process. Id.  The defendant paused once he reached a fence, behind which were two police cars blocking his path, and officers again told him to stop and get out.  Id.  Instead, the defendant "repeatedly rammed the fence, finally breaking through and ramming the [officers'] cars."  Id.  He "eventually ran aground on a stump" and was arrested. Id.  On appeal, we held the evidence was sufficient to support his conviction under § 111(b), despite his claim that he did not intend to direct force at the officers and was "simply driving, head down, attempting to flee."  See id. at 1386.

Finally, Gumbs's car was capable of causing serious bodily injury or death to another person.  See United States v. Gualdado, 794 F.2d 1533, 1535 (11th Cir.

19

1986) ("An automobile has been held to constitute a deadly weapon when used to run down a law enforcement officer."). And he used the car in a way that could have caused, and did cause, serious injury to the officers. Gumbs "floored the gas peddle [sic]" as the officers were inches away, yelling at him to get out, and reaching inside the car. Gumbs used the car to shake loose of the officers about to arrest him and break the blockade so he could get out of the parking lot. He just missed hitting the officers by his window and did hit Inspector Lempka. Even Gumbs admitted that his argument for acquittal was weakest as to the officers standing closest to the car (the officers whom the jury found him guilty of forcibly resisting). The evidence was sufficient to support Gumbs's conviction on count two of the indictment.

## CONCLUSION

The district court did not abuse its discretion in refusing to give Gumbs's proposed jury instructions and in giving a supplemental instruction in response to the jury's question. Because the evidence was sufficient to support Gumbs's conviction on count two of the indictment, we affirm.

**AFFIRMED.**