UNITED STATES of America, Plaintiff-Appellee,

v.

Robert GIAMPINO, Defendant-Appellant.

No. 1034, Docket 81–1509.

United States Court of Appeals, Second Circuit.

Argued April 29, 1982.

Decided June 2, 1982.

Rehearing Denied Sept. 3, 1982.

---

Before MANSFIELD and KEARSE, Circuit Judges, and CABRANES,* District Judge.

KEARSE, Circuit Judge:

Defendant Robert Giampino appeals from a judgment of conviction entered in the United States District Court for the Northern District of New York, after a jury trial before Neal P. McCurn, *Judge*, for forcibly impeding and assaulting a federal marshal, in violation of 18 U.S.C. § 111 (1976). Because the district court failed to accede to the defendant's proper request that the jury be instructed with respect to a lesser-included offense under 28 U.S.C. § 1501 (1976), we reverse and remand.

## FACTS

Although there are two opposing versions of the key events leading to the present prosecution, certain facts are not in dispute. On September 1, 1981, a temporary restraining order was entered in the district court in a case entitled *Good Vibrations, Inc. v. Various John Does*, No. 81–CV–916, restraining unauthorized individuals from selling T-shirts bearing the name, trademark, or service mark of the "Charlie Daniels Band" at or near the gate of the New York State Fair Grounds in Syracuse. On September 3 and the early morning hours of September 4, federal marshal James A. Tassone was, in the performance of his official duties, working at the Fair Grounds to enforce the restraining order. Tassone was accompanied by an assistant, William Chrysler. Around midnight, Tassone spied defendant Giampino selling Charlie Daniels Band T-shirts at a location at which Tassone knew no licensed sellers were operating. Tassone and Chrysler accosted Giampino; Tassone identified himself as a federal marshal, informed Giampino of the court order, and confiscated Giampino's bootleg T-shirts. This confrontation was, apparently, peaceful.

John McCann, Asst. U. S. Atty., Syracuse, N. Y. (George H. Lowe, U. S. Atty., N. D. N. Y., and Joseph A. Pavone, Asst. U. S. Atty., Syracuse, N. Y., on the brief), for plaintiff-appellee.

John J. Brunetti, Syracuse, N. Y., for defendant-appellant.

* The Honorable José A. Cabranes, of the United States District Court for the District of Connecticut, sitting by designation.

Some ten minutes later, as the concert audience began to fill the exit walkways, Tassone and Chrysler spied on a ramp two other persons they thought were selling unauthorized T-shirts, and they began to walk toward these two sellers. Giampino saw Tassone and Chrysler approaching these T-shirt bootleggers, one of whom was a friend of Giampino, and Giampino immediately moved toward his friend.

The accounts of what followed differ. Tassone testified that when he was a step or two from the vendor directly in front of him he heard shouting from behind, as Giampino came shoving through the crowd, yelling, in substance, "Look out. They are after you. Run." Giampino shoved Tassone against the side railing, nearly knocking him off the ramp. Tassone regained his balance and tried to push his way past Giampino, whereupon Giampino punched him in the face. Tassone in turn punched Giampino in the face. Eventually, after other encounters not material to our review, Tassone placed Giampino under arrest and, following some additional scuffling, handcuffed him.

The testimony of Chrysler was similar although not identical. Chrysler testified that as he was approaching a person he believed to be a bootleg vendor, Giampino was shouting to someone else to run. Chrysler saw Giampino shove Tassone as Tassone was about to grab the other T-shirt seller, but did not see Giampino punch Tassone at this point. Chrysler testified that minutes later he saw a struggle as Tassone attempted to handcuff Giampino, and saw Giampino punch Tassone during this scuffle.

The description given at trial by Giampino differs from the versions of Tassone and Chrysler in one material respect: Giampino testified that no punches were thrown and that he never pushed Tassone. Giampino's version of what followed the peaceful confiscation of his own supply of bootleg T-shirts was that he saw Tassone and Chrysler approaching his friend who was bootlegging T-shirts, and he rushed past them and told his friend, "nose-to-nose," to run because the marshals were coming. As his friend hesitated and the marshals drew near, Giampino gave his friend a push, and his friend "left very fast." The marshals "were very upset" and pushed Giampino to the ground and attempted to knee him in the face. Giampino testified that he never punched or pushed Tassone nor used any other form of force against him.

Section 111 of 18 U.S.C., under which Giampino was prosecuted, provides in pertinent part as follows:

Whoever forcibly assaults, resists, opposes, impedes, intimidates, or interferes with any person designated in section 1114 of this title while engaged in or on account of the performance of his official duties, shall be fined not more than $5,000 or imprisoned not more than three years, or both.

Marshals are designated as protected officials in 18 U.S.C. § 1114 (1976). At the close of the evidence Giampino requested, pursuant to the lesser-included offense doctrine, that the jury be instructed that if it found that Giampino had obstructed Tassone without the use of force it was entitled to acquit him of violating § 111, a felony, and find him guilty only of violating 18 U.S.C. § 1501, a misdemeanor.[1] Section 1501 reads as follows:

1. The lesser-included offense doctrine allows the jury to find a defendant guilty of an uncharged offense that is included within, but not coextensive with, the offense charged. *See* discussion in text, *infra*; Fed.R.Crim.P. 31(c) ("The defendant may be found guilty of an offense necessarily included in the offense charged ....") The primary purpose of the doctrine is to aid the prosecution when it has failed to prove all of the elements of the offense charged in the indictment. Nevertheless, it "may also be availed of by the defense, and in fact is invoked more often by the defense since it provides the jury with an alternative which may permit mitigation of punishment for the greater offense." 8A *Moore's Federal Practice* ¶ 31.03[1], at 31-14 (2d ed. 1981) (footnote omitted). "[I]f there is evidence to support a lesser-included offense and defendant requests such a charge, the court has no discretion to refuse to give the instruction." *Id.* at 31-15; *accord Stevenson v. United States,* 162 U.S. 313, 314-15, 323, 16 S.Ct. 839, 842, 40 L.Ed. 980 (1896).

Whoever knowingly and willfully obstructs, resists, or opposes any officer of the United States, or other person duly authorized, in serving, or attempting to serve or execute, any legal or judicial writ or process of any court of the United States, or United States magistrate; or

Whoever assaults, beats, or wounds any officer or other person duly authorized, knowing him to be such officer, or other person so duly authorized, in serving or executing any such writ, rule, order, process, warrant, or other legal or judicial writ or process—

Shall, except as otherwise provided by law, be fined not more than $300 or imprisoned not more than one year, or both.

At the government's urging, and relying on *United States v. Abraham,* 627 F.2d 205, 207 (9th Cir. 1980), the district court denied Giampino's requested instruction on the ground that § 1501 is not a lesser offense since the elements of the offenses described by § 111 and by § 1501 are identical.

The jury, instructed only as to § 111, found Giampino guilty of violating that section.[2] On appeal Giampino renews his contention that he was entitled to a lesser-included offense instruction.[3] We agree and reverse the judgment.

### DISCUSSION

■ The three fundamental criteria for determining whether, in a particular case, a defendant is entitled to have the jury instructed as to a lesser-included offense are well established. First, for an uncharged offense to be "included," all of its elements must also be elements of the offense charged. *E.g., United States v. Nelson,* 563

F.2d 928, 930–31 (8th Cir. 1977); *United States v. Liddy,* 542 F.2d 76, 82 (D.C.Cir. 1976). Second, to be "lesser," the uncharged included offense must be composed of fewer than all of the elements comprising the offense charged. *Berra v. United States,* 351 U.S. 131, 76 S.Ct. 685, 100 L.Ed. 1013 (1956). Finally, as to the element of the charged offense of which proof is not required for establishment of the lesser-included offense, there must be an evidentiary basis upon which a rational jury could find that element not established. "A lesser-included offense instruction is only proper where the charged greater offense requires the jury to find a *disputed* factual element which is not required for conviction of the lesser-included offense." *Sansone v. United States,* 380 U.S. 343, 350, 85 S.Ct. 1004, 1009, 13 L.Ed.2d 882 (1965) (emphasis added); *accord, United States v. Tsanas,* 572 F.2d 340, 343 (2d Cir.), *cert. denied,* 435 U.S. 995, 98 S.Ct. 1647, 56 L.Ed.2d 84 (1978).

■ All three criteria are satisfied in the present case. There is no dispute that a § 1501 offense was "included" in the § 111 offense. Every element required to establish Giampino's obstruction of Tassone in violation of § 1501 was ·also essential for establishment of Giampino's guilt under § 111. Thus, if the prosecution proved a violation of § 111, it necessarily also proved a violation of § 1501.[4]

The principal disagreement centers on whether § 1501 is a "lesser" offense than § 111. Giampino contends that § 1501 is lesser because whereas § 111 requires proof that the defendant used force, § 1501 does not. The government takes the position,

---

**2.** The court sentenced Giampino to the custody of the Attorney General for treatment and supervision as a young adult offender, pursuant to 18 U.S.C. §§ 4216, 5010(b), and 5017(c) (1976).

**3.** Giampino raises two additional points which are meritless. First, the trial court's permitting the jury to take a copy of the indictment into the jury room, after taking care to instruct the jury that the indictment was not to be considered evidence, was not an abuse of discretion. *United States v. Press,* 336 F.2d 1003, 1016 (2d Cir. 1964), *cert. denied,* 379 U.S. 965,

85 S.Ct. 658, 13 L.Ed.2d 559 (1965). Second, the prosecutor's comment on the nonappearance at trial of Giampino's friend to corroborate Giampino's version of the events was not impermissible. *E.g., United States v. Coven,* 662 F.2d 162, 171–72 (2d Cir. 1981); *United States v. Sindona,* 636 F.2d 792, 806 (2d Cir. 1980), *cert. denied,* 451 U.S. 912, 101 S.Ct. 1984, 68 L.Ed.2d 302 (1981).

**4.** Giampino does not challenge the sufficiency of the evidence.

relying on *United States v. Abraham, supra*, 627 F.2d 205, that both sections require proof of force. It is clear that § 111, which reaches one who "forcibly assaults, resists, opposes, impedes, intimidates or interferes with" a federal marshal performing his duties, requires proof of force. *United States v. Bamberger*, 452 F.2d 696 (2d Cir. 1971), *cert. denied*, 405 U.S. 1043, 92 S.Ct. 1326, 31 L.Ed.2d 585 (1972); *United States v. Camp*, 541 F.2d 737, 739 (8th Cir. 1976) ("[T]he use of force is an essential element of the offense defined in 18 U.S.C. § 111 ...."); *Long v. United States*, 199 F.2d 717, 719 (4th Cir. 1952) (adverb "forcibly" modifies each of the verbs following. it). The mere obstruction of a federal marshal without the use or threat of force would not violate § 111. As we stated, in *United States v. Bamberger*,

> [§] 111 is not meant to sweep in all harassment of government officials involving "laying a finger" on them. Nor is it used to penalize frustrating an official, without more, even if that action is deliberate. The central issue ... is whether the defendants attempted to or did resort to force as a method of persuasion of a federal official.

452 F.2d at 699.

Section 1501, by contrast, describes some offenses that may be committed without the use or threat of force. Although the second paragraph of § 1501, which deals with one who "assaults, beats, or wounds" an officer, implicitly requires proof of force, the same cannot be said for the first paragraph. The first paragraph of § 1501 reaches any person "who[ ] knowingly and willfully obstructs, resists, or opposes" an officer. There is no mention of force, nor use of a verb that connotes the use of force, nor any logical reason why such obstruction, resistance, or opposition cannot occur without force. Accordingly, § 1501 and its predecessor, Rev.Stat. § 5398, have been construed not to require proof of force:

> [Rev.Stat. § 5398] includes also willful acts of obstruction or opposition; and to obstruct is to interpose obstacles or impediments, to hinder, impede or in any manner interrupt or prevent, and this

term does not necessarily imply the employment of direct force ....

*United States v. McDonald*, 26 Fed.Cas. 1074, 1077 (C.C.E.D.Wis.1879) (No. 15,667) (jury charge); *United States v. Peifer*, 474 F.Supp. 498, 505 (E.D.Pa.1979) ("[t]he government did not need to show that defendant threatened or performed an act of violence" in § 1501 prosecution for willful obstruction, resistance or opposition), *aff'd mem.*, 615 F.2d 1354 (3d Cir.), *cert. denied*, 446 U.S. 940, 100 S.Ct. 2162, 64 L.Ed.2d 794 (1980).

We conclude, therefore, that the offense of willful and knowing obstruction defined in the first paragraph of § 1501 did not require proof of force and was thus a lesser offense included in § 111. The government's reliance on *United States v. Abraham, supra*, is misplaced since that case dealt solely with assault, an offense described in the *second* paragraph of § 1501: "At trial, appellants argued that they were guilty, at most, of a violation of 18 U.S.C. § 1501, which makes it a misdemeanor to *assault* any officer or authorized person serving or executing process." 627 F.2d at 206 (emphasis added). So far as appears from the *Abraham* opinion, no other provision of § 1501 was invoked.

Finally, it is indisputable that there was evidence on the basis of which the jury could rationally have found Giampino guilty of violating § 1501 but not § 111, for Giampino testified that he used no force whatever against Tassone. His version of the event was that he helped his friend, who was bootlegging T-shirts, to avoid their confiscation pursuant to the court's restraining order. But though he pushed his friend, Giampino testified that he never pushed or punched Tassone. On the basis of Giampino's testimony, the trial court observed, in a conference as to how the jury was to be charged, that "the jury may find there was no force at all." (Tr. 178.) Accordingly, the jury should not have been forced to make an all-or-nothing decision to convict or acquit on § 111 alone, but should, as Giampino requested, have been given the

option of finding him guilty of violating § 1501 if it found that the force required for a § 111 violation had not been proven beyond a reasonable doubt.[5]

We therefore reverse the judgment of conviction and remand the case for a new trial to a properly instructed jury. We note, however, that if both the government and Giampino consent, the district court may, in its discretion after hearing both parties, enter a judgment of conviction under § 1501 without retrial if it considers this course to be in the interests of justice. *See United States v. Crutchfield*, 547 F.2d 496, 502 (9th Cir. 1977); *United States v. Huff*, 442 F.2d 885, 891 (D.C.Cir.1971).

Reversed and remanded.

---

**5.** Indeed, the jury evinced some concern as to the issue of force, for after commencing delib-erations it twice inquired whether the word "forcibly" modified each verb used in § 111.