UNITED STATES of America,
Appellee,

v.

Mark ALFISI, Defendant–Appellant.

Docket No. 01–1152.

United States Court of Appeals,
Second Circuit.

Argued: Oct. 26, 2001.

Decided: Oct. 8, 2002.

**146**

Karl E. Pflanz, Newman & Greenberg (Richard A. Greenberg, of counsel), New York, NY, for Appellant.

Evan T. Barr, Assistant United States Attorney (Mary Jo White, United States Attorney, and Celeste L. Koeleveld, Assistant United States Attorney, of counsel), New York, NY, for Appellee.

Before: VAN GRAAFEILAND, WINTER, and SACK, Circuit Judges.

Judge SACK dissents in a separate opinion.

WINTER, Circuit Judge.

Mark Alfisi appeals from a conviction by a jury before Judge Hellerstein on counts of: (i) bribery of a public official in violation of 18 U.S.C. § 201(b)(1)(A); (ii) paying an unlawful gratuity to a public official in violation of 18 U.S.C. § 201(c)(1)(A); and (iii) engaging in a conspiracy to commit bribery in violation of 18 U.S.C. § 371.

The charges against Alfisi arose out of payments he made to a United States Department of Agriculture ("USDA") produce inspector at the Hunts Point Terminal Market. On appeal, Alfisi contends principally that the district court's jury instructions failed to delineate accurately the difference between the crime of bribery, which includes a *quid pro quo* element, and that of paying unlawful gratuities, which does not. He also claims that the instructions erroneously allowed the jury to convict him of bribery even though his payments were intended only to procure lawful action from a government official. Alfisi further argues that the jury should not have been allowed to consider the payment of an unlawful gratuity as a lesser-included offense of bribery. Alternatively, he claims that, if the payment of an unlawful gratuity was properly charged as a lesser offense, then the misdemeanor of unlawfully supplementing a federal employee's salary should also have been submitted as a lesser offense to the jury. Finally, Alfisi contends that the district court violated his Sixth Amendment right to present a defense when it interrupted and cut short his counsel's closing summation.

We reject these arguments and affirm.

## BACKGROUND

We view the facts in the light most favorable to the government. *See Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1942) (noting that a criminal verdict "must be sustained if there is substantial evidence, taking the view most favorable to the government, to support it") (superseded by statute on other grounds); *see also United States v. Zichettello,* 208 F.3d 72, 81 (2d Cir.2000).

This appeal involves purchases and sales of fresh produce at the Hunts Point Terminal Market, the world's largest wholesale produce market. Growers ship their produce to the Hunts Point Market where it is sold to wholesalers. The sales are consummated through purchase contracts negotiated between wholesalers and commercial brokers who act as agents for the growers. Generally, purchase contracts set a price and stipulate a particular required quality of the produce, stated by grade levels, to be met at the time of delivery. The grade level of a load of produce substantially affects the ultimate sale price, and even a slight lowering of grade can result in a sizeable drop in the value of produce. Also, if a load of produce does not meet the contractually stipulated grade level upon delivery, the price of the produce must be renegotiated downward by the parties to reflect this change.

There are two sets of widely-used standards for measuring the grade level of produce. One set is promulgated by the USDA and rates produce according to "quality" and "condition." In this context, "quality" refers to inherent defects, such as the size or shape of the produce, that are constant over time. "Condition" refers to defects, such as decay, discoloration, or bruising, that may worsen with aging. Under the USDA standards, the grade level of a load of produce is determined by the frequency, marked as a percentage, of "quality" and "condition" defects detected in the load.

The alternative set of standards is known as the "good delivery" standards and uses the same frequency-of-defects measure as the USDA standards to determine the grade level of a load of produce. The "good delivery" standards, however, are considered more lenient than the USDA standards because they discount for the almost inevitable deterioration that a load of produce will suffer while being shipped.

If commercial brokers and wholesalers disagree as to the grade level of a load of produce, they have the option of requesting an inspection by the USDA's Agricultural Marketing Service for a nominal fee. When they opt for such an inspection, a USDA produce inspector will examine random samples from the disputed load of produce to determine the frequency of "quality" and "condition" defects among the produce. The inspector will then record the percentage of defects on an official USDA inspection certificate. A USDA inspection certifies the grade level of a load of produce according to only the USDA's standards; it does not apply the unofficial "good delivery" standards. However, parties to contracts using "good delivery" standards rely on the percentage of defects indicated on the USDA inspection certificate to determine whether a load of produce meets the requirements of the particular contract.

At some point, federal officials undertook an investigation of corruption among USDA inspectors at the Hunt's Point Terminal Market. One such inspector, William Cashin, was arrested and thereafter cooperated in the investigation. Cashin and other USDA officials had routinely accepted money from wholesalers at the Hunts Point Market since about 1980. In the course of the scheme, an inspector would receive $50 in cash per inspection from wholesalers. That inspector would kick back a portion of this payoff to his or her supervisor as payment for receiving profitable assignments, i.e., assignments to bribing wholesalers. According to Cashin, the payoffs from the wholesalers were in exchange for downgrading the grade level of a load of produce by recording a higher percentage of defects than were actually observed. When applied to the unofficial

"good delivery" standards, a false downgrade allowed the wholesalers to renegotiate downward the price of a load of produce.

As part of Cashin's cooperation with the government, he continued his work as a USDA inspector while also serving as an undercover agent. Cashin was assigned by his supervisor to the produce wholesaler Post & Taback. Alfisi was employed by Post & Taback, and Cashin's supervisor informed Cashin that Alfisi was prepared to make payoffs. After Cashin contacted Alfisi, Alfisi agreed to pay Cashin $50 in cash per inspection performed for the firm. Cashin and Alfisi also devised code phrases by which Alfisi was able to alert Cashin when Alfisi needed "help" with a load of produce. Cashin testified that in exchange for the $50 payments, he would falsely downgrade loads of produce except where they were already "legitimately bad." Many of Cashin's discussions with Alfisi were videotaped and audiotaped. On these recordings, Alfisi gave Cashin money and discussed Cashin's inspection of produce. As a result, Alfisi was arrested and charged with various counts of bribery, paying unlawful gratuities, and conspiracy.

The recordings, as well as Cashin's testimony, were introduced as government evidence at Alfisi's trial. Alfisi did not testify but did present evidence in support of his defense that he did not make the payoffs to obtain false inspection results. Rather, he argued that Cashin and other USDA officials at the market were operating an extortion scheme and that Alfisi was coerced into paying Cashin solely to ensure that Cashin would do his job properly. In that regard, Alfisi offered evidence from three produce brokers that some of Cashin's inspections yielded accurate grade levels. Cashin could not specify at trial whether particular certifications that caused specific loads of produce to fail

"good delivery" standards had been falsely downgraded or were "legitimately bad."

After six days of trial and four days of deliberation, the jury convicted Alfisi of seven counts of bribery, six counts of paying unlawful gratuities as a lesser-included offense to bribery, and one count of conspiracy to commit bribery. The district court sentenced Alfisi to a prison term of a year and a day, two years of supervised release, and a fine of $6,000.

## DISCUSSION

### a) The Instructions on Bribery and Payment of Unlawful Gratuities

As noted, Alfisi's principal defense at trial was that he was coerced into paying Cashin solely to get the latter to perform accurate inspections. The jury was instructed as to Alfisi's economic coercion defense but rejected it. No claim of error is made as to that instruction, and Alfisi's principal argument on appeal is that the jury was erroneously instructed on the elements of bribery and paying unlawful gratuities.

As we understand Alfisi's argument, he claims first that the instruction given by the district court failed to explain sufficiently the difference between bribery, which requires a *quid pro quo* element, and paying unlawful gratuities, which does not. Second, he argues that the instruction erroneously allowed the jury to convict him for bribery even if the jury found that the payments were a *quid pro quo* exchange for Cashin to perform his job faithfully.

■ "Jury charges are reviewed *de novo*," *United States v. Han*, 230 F.3d 560, 565 (2d Cir.2000), and we will not find reversible error unless a charge either failed to inform the jury adequately of the law or misled the jury as to the correct legal rule. *See United States v. Doyle*, 130

F.3d 523, 535 (2d Cir.1997). We are satisfied that the district court's jury instructions, viewed in their entirety, were correct.

We begin by examining the pertinent elements of bribery and paying unlawful gratuities. The bribery provision, 18 U.S.C. § 201(b)(1)(A), renders it unlawful for any person to "directly or indirectly, corruptly give[ ], offer[ ] or promise[ ] anything of value to any public official ... with intent ... to influence any official act." The payment of an unlawful gratuity involves an act where a person "directly or indirectly gives, offers, or promises anything of value to any public official ... for or because of any official act performed or to be performed." 18 U.S.C. § 201(c)(1)(A). Bribery therefore requires that the payor intend "to influence" an official act "corruptly" while the payment of an unlawful gratuity requires only that the payment be "for or because of" an official act. *See United States v. Sun-Diamond Growers of California*, 526 U.S. 398, 404, 119 S.Ct. 1402, 143 L.Ed.2d 576 (1999); *United States v. Crozier*, 987 F.2d 893, 899 (2d Cir.1993); *see also United States v. Biaggi*, 909 F.2d 662, 684 (2d Cir.1990).

The "corrupt" intent necessary to a bribery conviction is in the nature of a *quid pro quo* requirement; that is, there must be "a specific intent to give ... something of value *in exchange* for an official act." *Sun-Diamond Growers*, 526 U.S. at 404–05, 119 S.Ct. 1402 (emphasis in original). Putting it only slightly differently, bribery involves the giving of value to procure a specific official action from a public official. *See United States v. Myers*, 692 F.2d 823, 841 (2d Cir.1982). The element of a *quid pro quo* or a direct exchange is absent from the offense of paying an unlawful gratuity. To commit that offense, it is enough that the payment

be a reward for a past official act or made in the hope of obtaining general good will in the payee's performance of official acts off in the future. *See Sun-Diamond Growers*, 526 U.S. at 405, 119 S.Ct. 1402; *Biaggi*, 909 F.2d at 684–85; *Myers*, 692 F.2d at 841.

Turning to the instructions in the present case, the district court initially informed the jury that Alfisi could be convicted of bribery if the government proved beyond a reasonable doubt that he paid money "wilfully, corruptly and with intent to influence an official act to be performed by Inspector Cashin." In defining "corruptly," the district court stated that the term entailed a "specific intent to influence Inspector Cashin's official acts of performing inspections and certifying the condition and grade of fruits and vegetables." The payment of an unlawful gratuity was described as the giving of money "for or because of official acts performed or to be performed by William Cashin." More specifically, the district court told the jury that to prove the payment of an unlawful gratuity, the government must show a link between the payment and some official act, but not corrupt intent as earlier defined.

As we understand the first aspect of Alfisi's argument, he believes that these instructions were not sufficiently specific as to the *quid pro quo* element of bribery to spell out adequately the difference between that crime and paying unlawful gratuities. In that regard, it is significant that the district court's explanation of bribery and paying unlawful gratuities virtually mirrors the statutory language contained in 18 U.S.C. §§ 201(b)(1)(A), 201(c)(1)(A) and used by many courts to distinguish the two crimes. *See, e.g., Sun-Diamond Growers*, 526 U.S. at 404–05, 119 S.Ct. 1402; *Myers*, 692 F.2d at 841; *see also United States v. Bonito*, 57 F.3d 167,

171 (2d Cir.1995). Where a district court's jury instructions accurately track the language and meaning of the relevant statute, we generally will not find error. *See id.* However, we need not affirm here on the court's initial instructions, because the court later erased all doubt as to the need for proof of a *quid pro quo* arrangement to convict Alfisi of bribery.

The jury evidently found the instructions somewhat ambiguous with regard to the difference between bribery and paying unlawful gratuities and asked the court for clarification. In response, the court described bribery as the giving of money to a public official "for or because of an official act [and] with a corrupt intention specifically to influence the outcome of the official act." This instruction clearly set out the *quid pro quo* requirement, and, accordingly, any ambiguity in the original jury instructions was cured. The events here

suggest that it might be well to add similar language in the future for such jury instructions.

 Alfisi also argues that he should not be found guilty of bribery if he paid money to Cashin solely to induce him to perform his job faithfully. Put another way, Alfisi contends that the term "corruptly" requires evidence of an intent to procure a violation of the public official's duty. For this reason, he contends, it was not "corrupt" for him to give Cashin money to ensure that Cashin inspect and report accurately on the produce because that was Cashin's legal duty. We are not persuaded.[1]

First, Alfisi's suggested reading of the bribery statute does not rest comfortably within the statutory language. Subsection (b)(1)(A), the basis for Alfisi's bribery convictions, outlaws payments made with a corrupt intent—to procure a *quid pro quo*

---

1. The dissent argues that the statute's use of "corruptly" precludes a conviction for bribery if the defendant paid a public official only for the performance of a legal duty. In that regard, it relies upon *United States v. Barash*, 365 F.2d 395 (2d Cir.1966) ("*Barash I*"), which stated that, "if a government officer threatens serious economic loss unless paid for giving a citizen his due, the latter is entitled to have the jury consider this ... as bearing on the specific intent required for the commission of bribery." *Id.* at 401–02. However, *Barash I* does not state that the existence of economic coercion negates a "corrupt" intent. Instead, it recognizes more generally that economic coercion is relevant to the culpability of the intent of a defendant charged with bribery. *Barash I* does not limit the kinds of *quid pro quo* exchanges that qualify as bribery.

Moreover, our ruling in the present matter is based on precedent subsequent to *Barash I*. In *United States v. Kahn*, 472 F.2d 272 (2d Cir.1973), we upheld a jury charge that treated the issue of economic coercion separately from the object of bribery, i.e., what is sought by the payor. *Id.* at 279. The district court's instructions in this case closely match those addressed in *Kahn*, where the jury was told

that bribery required the intent to influence a "public officer with respect *to any official act*." *Id.* (emphasis in original). We simply adhere to that precedent. As a policy matter, the dissent's position ignores *Kahn's* concern that "[t]he proper response to coercion by corrupt public officials should be to go to the authorities, not to make the payoff." *Id.* at 278.

Finally, we emphasize that Alfisi requested and received instructions to the jury regarding an economic coercion defense. However, he failed to convince the jury. Thereafter, he was convicted of bribery for his *quid pro quo* arrangement with Cashin. This outcome is entirely consistent with our holding in *United States v. Barash*, 412 F.2d 26 (2d Cir.1969) ("*Barash II*"), a case addressing an appeal from the second trial mandated by *Barash I*. Barash II makes it clear that economic coercion is not an issue derived from the term "corruptly" in the statute but is instead a defense for which separate instructions are to be given. *Id.* at 29–30. Once the defense of economic coercion has been rejected, a defendant may properly be convicted for paying bribes to a public official for any kind of a *quid pro quo* exchange. *See Kahn*, 472 F.2d at 279.

agreement—"to influence any official act." [2] It cannot be seriously argued that Alfisi's payments did not fall within that broad language, even if he was paying Cashin solely to make accurate inspections.[3]

Second, there is no lack of sound legislative purpose in defining bribery to include payments in exchange for an act to which the payor is legally entitled. On the one hand, there is of course a danger of overinclusion in a broad definition, in particular the risk here that marginally culpable conduct by those facing insistent extortionists will be criminalized. That danger is eliminated or at least minimalized, however, by the existence of the economic coercion defense, which the jury rejected in the present case.

On the other hand, a danger of underinclusion inheres in the narrow definition suggested by Alfisi. This is particularly so in cases where the official duties require the exercise of some judgment or discretion. In such cases, if the government must prove beyond a reasonable doubt actual or intended violations of official duties, many highly culpable payments would go underpunished as unlawful gratuities, or unpunished altogether.[4]

■■■ For example, if a party to litigation were to pay a judge money in exchange for a favorable decision, that conduct would—and should—constitute bribery, even if a trier of fact might conclude *ex post* that the judgment was on the merits legally proper. This principle was at stake and upheld in a decision arising from the most lamentable episode in this court's history. *See United States v. Manton*, 107 F.2d 834, 845–46 (2d Cir.1939) (rejecting Chief Circuit Judge's defense that payments in exchange for particular decisions were not obstruction of justice where decisions rendered were legally correct). In such a case, the key element of the offense is the intent of the payor to purchase a particular decision "without regard to

**2.** The dissent argues that defining "corruptly" to include the intent to engage in a *quid pro quo* exchange renders the term surplusage because the *quid pro quo* element is established in the statutory language "with intent ... to influence any official act...." 18 U.S.C. § 201(b)(1)(A). However, that language, standing alone, can just as easily describe the motivation for paying an unlawful gratuity, e.g., with the hope of buying general goodwill that "influences" an official's future act. Therefore, far from being a surplusage, the term "corruptly" distinguishes between the nature of the influence sought by a person who commits bribery and another who pays an unlawful gratuity. We believe this view sustained by the comparison of bribery and unlawful gratuity in *Sun–Diamond*, 526 U.S. at 404–05, 119 S.Ct. 1402.

**3.** Section (b)(1)(C) outlaws payments with the same corrupt intent "to induce [a] public official ... to do or omit to do any act in violation of the lawful duty of such official or person." Subsections (A) and (C) undoubtedly overlap in some considerable measure, although resort to (A) seems most appropriate in the case of bribes regarding decisions involving the exercise of judgment or discretion, such as judicial decisions or produce inspections, while use of (C) would be most appropriate in the case of bribes to induce actions that directly violate a specific duty, such as a prison guard's duty to prevent the smuggling of contraband.

**4.** We do not agree that *Sun–Diamond* requires us to define the crime of bribery narrowly. The dissent selectively quotes from text spanning multiple paragraphs on four pages of that opinion and omits important distinguishing details. As we understand *Sun–Diamond*, the offense of paying unlawful gratuity should not be broadly construed because there are other laws and regulations *specifically dealing with the problem of public officials receiving unlawful gratuities.* 526 U.S. at 409–12, 119 S.Ct. 1402. *Sun–Diamond*, however, says nothing about bribery, especially with regard to how the term "corruptly" should be interpreted.

the merits," *id.* at 846, as opposed to an impartial judgment.[5] The legal merits, or lack thereof, of the judgment rendered is not an element of the offense. *See Sun–Diamond Growers,* 526 U.S. at 404–05, 119 S.Ct. 1402.

b) *Other Issues*

 Alfisi's other arguments are also meritless. First, he contends that the district court should not have allowed the jury to consider the unlawful gratuity theory as a lesser-included offense of bribery. This view is contrary to our well-estab-

lished law. *See, e.g., United States v. Lasanta,* 978 F.2d 1300, 1309 (2d Cir.1992), *overruled on other grounds by Florida v. White,* 526 U.S. 559, 119 S.Ct. 1555, 143 L.Ed.2d 748 (1999); *United States v. Zacher,* 586 F.2d 912, 915 (2d Cir.1978). Paying an unlawful gratuity is a subset of bribery that does not include the element of a specific *quid quo pro* intent. *See Sun–Diamond Growers,* 526 U.S. at 404, 119 S.Ct. 1402. The district court therefore did not err in allowing the jury to consider the payment of an unlawful gratuity as a lesser-included offense of bribery.[6]

5. The dissent's response to our analysis here supports our conclusion. The dissent states that paying a judge for a favorable, albeit legally proper, decision would nonetheless constitute bribery because the judge would be deciding the case based on the identities of the parties rather than the merits of the case. However, precisely the same description applies to Alfisi's payments to Cashin. Even if Alfisi merely paid Cashin to perform a proper and honest inspection, Cashin would nonetheless be improperly carrying out his function according to the identities of the parties.

6. The dissent contends that paying an unlawful gratuity cannot be a lesser included offense of bribery because each offense contains elements that are not *necessarily included* in the other. We disagree for several reasons. First, if the dissent's view were adopted, a variety of established precedents would be disturbed. For example, in *Rutledge v. United States,* the Supreme Court held that conspiracy under 21 U.S.C. § 846 is a lesser included offense to a Continuing Criminal Enterprise ("CCE") under 21 U.S.C. § 848. *Rutledge,* 517 U.S. 292, 300, 116 S.Ct. 1241, 134 L.Ed.2d 419 (1996). It reached that result because Section 848 has an "in concert" element that is the equivalent of a conspiratorial agreement and carries a heavier penalty than Section 846. *Id.* Section 846 can be violated, however, by a person acting alone, i.e., it applies to "[a]ny person who *attempts or* conspires to commit any offense defined in this subchapter...." 21 U.S.C. § 846 (emphasis added). While one can violate Section 846 without violating Section 848 under the "attempt" prong of Section 846, a violation of

the "conspires" portion of Section 846 is nevertheless a lesser included offense of Section 848.

In this regard, the relationship of paying an illegal gratuity to paying a bribe is not materially different from the relationship of conspiracy to a CCE offense, and the inclusion of possible or alternative elements in the crime of paying an illegal gratuity does not preclude it from being a lesser included offense to bribery. To hold otherwise would necessarily contradict *Rutledge* and a number of other cases in which we have found a lesser included offense notwithstanding the existence of *possible or alternative, and non-mandatory,* elements in the lesser offense not contained in the greater offense. *See, e.g., United States v. Giampino,* 680 F.2d 898, 901–02 (2d Cir. 1982); *United States v. Rosenthal,* 454 F.2d 1252, 1255 (2d Cir.1972).

The dissent's view also runs counter to common sense and imposes an unnecessary and formalistic requirement on how Congress drafts criminal statutes. With regard to statutes that criminalize various acts in the disjunctive, Congress could have divided the various alternative elements into several discreet and independent sections. For example, 18 U.S.C. § 201 could have been separated into sections instead of subsections for payment to a former public official, for payment to a current public official, etc. Had Congress done so, there would be no doubt whatsoever that some crimes among those separate sections for paying an illegal gratuity would qualify as lesser included offenses of bribery. However, the dissent's theory would force us to read 18 U.S.C. § 201 differently because

■ Alfisi argues, alternatively, that the district court should have permitted the jury to consider also as a lesser offense the misdemeanor of supplementing the salary of an official of the United States under 18 U.S.C. § 209. We disagree. Under Section 209, the illegal payment must be in the nature of a "salary" or "contribution to or supplementation of salary" and "for services as an employee of the United States." In *United States v. Raborn*, 575 F.2d 688, 691 (9th Cir.1978) the Ninth Circuit held that Section 209 was not a lesser-included offense of Section 201(c), the unlawful gratuities provision, because the "salary" element of Section 209 is not an element of a violation of Section 201. *Id.* at 691–92. We are less certain than the court in *Raborn* that a violation of Section 209 cannot be a lesser included offense of the crimes set out in Section 201. For example, some payments labeled by a payor as salaries might reasonably be charged as bribes, leaving a trier of fact to determine whether they were bribes, the lesser offense of unlawful gratuities, or the even lesser offense of illegal supplementations to salary.

■ Juries must be instructed as to lesser-included offenses either when one simply cannot commit the greater crime without committing the lesser or when the evidence is such as to permit a finding that the lesser, but not the greater, offense had

been committed. *See Campaneria v. Reid,* 891 F.2d 1014, 1022 (2d Cir.1989). When the greater crime can be committed without committing the lesser and when the evidence would support a conviction for the former but not the latter, the lesser-included offense should not go to the jury. That is the circumstance here.

As we read Section 209, the payments in question must bear some or most of the objective indicia of salaries, e.g., being so recorded in business records and so treated for tax purposes by the payor. When accompanied by the requisite corrupt intent, such payments might violate Section 201. However, where the payments bear none of the indicia of salary but are made with the requisite corrupt intent, they violate Section 201 but not Section 209. A violation of Section 201 is not, therefore, inevitably a violation of Section 209. In the present case, moreover, there is no evidence that Alfisi or Post & Taback ever treated the payments to Cashin as salary. All of the evidence indicates that they were in cash and off-book. Even if Section 209 can be a lesser-included offense of Section 201 violations in some cases, therefore, the jury here should not have been instructed on Section 209.

■ Finally, Alfisi argues that the district court violated his right to present a defense under the Sixth Amendment when it interrupted counsel's closing summation

Congress opted to draft the statute as a singular but disjunctive whole, rather than as separate sections. Ascribing weight to "so formal a difference" in Congress' drafting is a practice that the Supreme Court has expressly rejected. *Whalen v. United States,* 445 U.S. 684, 694, 100 S.Ct. 1432, 63 L.Ed.2d 715 (1980).

Finally, it seems to us that the dissent's position potentially expands the exposure of a defendant such as Alfisi to multiple convictions for the same act. Under the current law of double jeopardy, where one charge is a lesser included offense of the other, "the Dou-

ble Jeopardy Clause prohibits prosecution of a defendant for a greater offense when he has already been tried and acquitted or convicted on the lesser included offense." *Ohio v. Johnson,* 467 U.S. 493, 501, 104 S.Ct. 2536, 81 L.Ed.2d 425 (1984). Were we to define a lesser included offense as proposed by the dissent, therefore, a defendant such as Alfisi could be charged and convicted of both bribery and paying an unlawful gratuity as separate offenses not subject to the bar against cumulative punishments for convictions on the same offense. *See id.* at 500, 104 S.Ct. 2536.

as he was about to state that Alfisi was not guilty of the lesser offense of paying unlawful gratuities. We again disagree. Alfisi was in fact not limited in making any argument to the jury. The court's interruption was prompted by defense counsel's telling the jury that he was raising the unlawful gratuities issue at that time because he would not be allowed to speak after the government's rebuttal summation. In interrupting, the court merely noted that the government had not addressed the unlawful gratuities issue in its main summation, as implied by defense counsel's remarks themselves, and elicited from the prosecutor a concession that he would not argue it in rebuttal. The district court then offered Alfisi's counsel an opportunity to finish his closing remarks with what he initially intended to say. Alfisi's counsel, in response, declined this opportunity. Counsel was not, therefore, prevented from making argument on the point.

## CONCLUSION

For the reasons indicated above, we affirm.

SACK, Circuit Judge, dissenting:

Because I think that the district court's jury instruction regarding the "corruptly" element of the bribery statute was incorrect, and because I think that payment of an illegal gratuity is not an offense necessarily included in the offense of bribery under the "elements" test that the Supreme Court requires us to apply under Rule 31(c), I respectfully dissent.[1]

## I. The "Corruptly" Element of Bribery

The first question challenging the Court is whether, as the majority holds, a defendant acts "corruptly" so as to violate the bribery statute if he intends his payment to influence a public official in *any* manner, or, as I think, only if he intends the public official to do what the official should not do, or to refrain from doing what he should. I thus do not disagree with the majority that a bribe payer is looking for a *quid pro quo;* unlike the majority, however, I think that the nature of the *quid pro quo* the payer is looking for matters. The "corruptly" element indicates that the bribe payer seeks not any manner of benefit, but seeks, rather, to corrupt.

To obtain relief based on a challenge to a jury instruction, a defendant must show both that the charges he requested "accurately represented the law in every respect[,] and that, viewing as a whole the charge actually given, he was prejudiced." *United States v. Pujana–Mena,* 949 F.2d 24, 27 (2d Cir.1991) (citation and internal quotation marks omitted). I address these requirements in turn.

Bribery under 18 U.S.C. § 201(b)(1)(A) requires the jury to find that the defendant "directly or indirectly, *corruptly* g[a]ve[ ], offer[ed] or promised [something] of value to [a] public official ... with intent ... to influence any official act performed or to be performed." *Id.* (emphasis added). As the majority explains, "[Alfisi] argued that [USDA inspector] Cashin and other USDA officials at the [Hunts Point Market] were operating an extortion scheme and that Alfisi was coerced into paying Cashin solely to ensure that Cashin would do his job properly." *Ante* at 148. Alfisi contended in the district court that because he paid Cashin to do his job properly, the payment was not made "corruptly"; a person acts "corruptly" only if he intends to cause an

---

**1.** I agree with the majority's analysis of the defendant's Sixth Amendment argument relating to the district court's curtailment of defense counsel's summation.

official to breach a public duty. Thus, Alfisi argued, if an official threatens to abuse his position in a way that will harm an individual, and that individual then makes a payment to avoid the abuse, the individual does not act "corruptly" because his intent is not to corrupt, but only to avoid the effects of corruption. Accordingly, Alfisi requested an instruction providing that "to act 'corruptly' is to act with the specific intent to secure an unlawful advantage or benefit." Appellant's Letter to the District Court dated Oct. 23, 2000, at 2 (brackets and internal quotation marks omitted).

Alfisi's requested instruction accurately reflects the law as I understand it. The mere presence of lawlessness or corruption in the circumstances of a payment to an official is not enough to make it "corrupt" and therefore a bribe. Rather, an unlawful or corrupt result must be that which the payer specifically seeks to achieve.

Bribery is a crime of specific intent. *United States v. Barash,* 365 F.2d 395, 402 (2d Cir.1966). A person therefore does not commit bribery unless he intends to bring about "the evil sought to be prevented" by the bribery statute, *United States v. Jacobs,* 431 F.2d 754, 759 (2d Cir.1970), *cert. denied,* 402 U.S. 950, 91 S.Ct. 1613, 29 L.Ed.2d 120 (1971). The evil of bribery that the criminal law seeks to prevent, we have said, is

> the aftermath suffered by the public when an official is corrupted and thereby perfidiously *fails to perform his public service and duty.* Thus the purpose of the statute is to discourage one from seeking an advantage by attempting to influence an official to depart from conduct deemed essential to the public interest.

*Id.* (emphasis added). *Jacobs* thus stands for the proposition that a bribe payer seeks advantage or benefit by attempting

to influence an official to breach a public duty. We have repeatedly reaffirmed this principle. "As is evident in many of our cases dealing with bribery, a fundamental concept of a 'corrupt' act is a breach of some official duty owed to the government or the public at large." *United States v. Rooney,* 37 F.3d 847, 852 (2d Cir.1994); *accord United States v. Zacher,* 586 F.2d 912, 915 (2d Cir.1978) ("The common thread that runs through common law and statutory formulations of the crime of bribery is the element of corruption, breach of trust, or violation of duty."); *United States ex rel. Sollazzo v. Esperdy,* 285 F.2d 341, 342 (2d Cir.1961) ("Bribery in essence is an attempt to influence another to disregard his duty while continuing to appear devoted to it or to repay trust with disloyalty.").

Our cases thus provide that a payment made in the course of a shakedown where the public official demands payment as a *quid pro quo* for proper execution of his duty is *not* a bribe. A person who makes a payment pursuant to such extortion intends not to cultivate corruption, but only to avoid the tendrils of a corruption already sprouted. Such a person does not act "corruptly" within the meaning of the statute because he does not seek the lawlessness that the bribery statute aims to prevent.

We recognized this principle in *Barash,* a case in which we dismissed an argument that economic coercion is merely an affirmative defense to the bribery statute:

> We think that if a government officer threatens serious economic loss unless paid for giving a citizen his due, the latter is entitled to have the jury consider this, not as a complete defense like duress but as bearing on the specific intent required for the commission of bribery.

*Barash,* 365 F.2d at 401–02. If a person could violate the bribery statute even if he hoped only to influence a public official to give him "his due," then the fact that the person was under pressure to pay for "his due" would not bear on the question of specific intent. But *Barash* holds the opposite, and thus supports Alfisi's position. To act corruptly and therefore to commit bribery, a person must do more than merely seek to secure some benefit or *quid pro quo.* Rather, the benefit sought must entail a breach of duty or trust. I therefore conclude that the jury instruction that Alfisi requested was correct as a matter of law.

The jury instructions submitted by the district court, on the other hand, not only seem to me to be at odds with our caselaw, they also appear to me to violate principles of statutory construction. The district court's instructions defined "corruptly" as *"specific intent to influence ... official acts...."* Trial Tr. of Oct. 24, 2000, at 942 (emphasis added). Inserting this definition of "corruptly" into the terms of the bribery statute, the district court effectively instructed the jury that Alfisi committed bribery if he "directly or indirectly, *with specific intent to influence official acts* [the court's definition of "corruptly"], [gave], offer[ed] or promise[d] [some]thing of value to [a] public official *with intent to influence any official act."* (emphasis added; ellipses omitted). The district court merely used the statute's other terms to define "corruptly," thus effectively reading "corruptly" out of the statute. I think that

this was clearly an error. It is a "well-settled rule of statutory construction that all parts of a statute, if at all possible, are to be given effect." *Weinberger v. Hynson, Westcott & Dunning, Inc.,* 412 U.S. 609, 633, 93 S.Ct. 2469, 37 L.Ed.2d 207 (1973) (citing *Jarecki v. G.D. Searle & Co.,* 367 U.S. 303, 307, 81 S.Ct. 1579, 6 L.Ed.2d 859 (1961), and *D. Ginsberg & Sons, Inc. v. Popkin,* 285 U.S. 204, 208, 52 S.Ct. 322, 76 L.Ed. 704 (1932)). Alfisi's definition of "corruptly," unlike the district court's, gives separate meaning to each of the terms of the statute.[2]

I find unpersuasive the majority's attempts to correct the district court's error and its reasons for dismissing Alfisi's interpretation of the statute. As indicated, it seems to me that the district court's definition of "corruptly" rendered that term surplusage. The majority attempts to salvage the district court's instructions by holding that they gave meaning to the term "corruptly" by defining it as connoting a *"quid pro quo." Ante* at 149–50. As noted, I agree that bribery involves the seeking of a *quid pro quo,* that is, an advantage in exchange for a payment. But attributing the *quid pro quo* element to the word "corruptly" does not avoid the surplusage because the words of the statute indicate that the *quid pro quo* element is established not by the term "corruptly," but rather by the other terms, i.e., a payment "with intent ... to influence any official act." That seems to me to be the import of *United States v. Sun–Diamond*

2. In response to a subsequent query from the jury, the district court gave an instruction defining bribery as the giving of money to a public official "for or because of an official act [and] with a corrupt intention specifically to influence the outcome of the official act." This did little to cure the problem with the first instruction because it continued to beg the question of the meaning of the word "corrupt." If "corrupt" means what the district court said it meant when it first instructed the jury, then, substituting that definition of "corrupt" into this new instruction, bribery consists of paying a public official "for or because of an official act [and] with specific intent to influence ... official acts ... [and the] intention specifically to influence the outcome of the official act." The result is redundant and still gives no separate meaning to the term "corruptly."

*Growers of Cal.*, 526 U.S. 398, 119 S.Ct. 1402, 143 L.Ed.2d 576 (1999), upon which the majority relies for the proposition that a bribe payer seeks a *quid pro quo*. In comparing a bribe with an illegal gratuity, *Sun–Diamond* does not address the fact that the bribery statute contains the term "corruptly" while the illegal gratuity statute does not; it addresses instead the fact that the bribery statute requires intent "to influence an official act" while the illegal gratuity statute does not. 426 U.S. at 404, 96 S.Ct. 2119. *Sun–Diamond* then holds what plain meaning suggests: The *quid pro quo* element arises not from the term "corruptly," but rather from the term "to influence":

> The distinguishing feature of each crime is its intent element. Bribery requires intent "to influence" an official act or "to be influenced" in an official act, while illegal gratuity requires only that the gratuity be given or accepted "for or because of" an official act. In other words, for bribery there must be a *quid pro quo*—a specific intent to give or receive something *in exchange* for an official act. An illegal gratuity, on the other hand, may constitute merely a reward for some future act that the public official will take (and may already have determined to take), or for a past act that he has already taken.

*Id.* at 404–05, 119 S.Ct. 1402 (emphasis in original). In holding that the " 'corrupt' intent necessary to a bribery conviction is in the nature of a *quid pro quo* requirement," *ante* at 149, the majority's construction of the statute seems not only at odds with *Sun–Diamond,* but also renders the term "to influence" surplusage by attributing its meaning to the term "corruptly."

The majority also argues that Alfisi's position, i.e., that "the term 'corruptly' requires evidence of an intent to procure a violation of the public official's duty," both "does not rest comfortably with the statutory language" and creates a "danger of underinclusion." *Ante* at 149–50. I think that Alfisi's construction is consistent with our case law, but even if it were not, I would find the majority's criticisms of it unpersuasive.

First, as I have indicated, it is the majority's suggested reading of the statute, and not Alfisi's, that I think rests uncomfortably with the statutory language because only Alfisi's gives separate meaning to each of the statute's terms—including "corruptly" and "intent . . . to influence any official act."

Second, an argument similar to the majority's "underinclusion" argument was rejected by the Supreme Court in *Sun–Diamond.* There the government sought to define the crime of paying an illegal gratuity broadly to cover gifts not associated with a specific official act. *Sun–Diamond,* 526 U.S. at 403, 119 S.Ct. 1402. The Supreme Court rejected that argument in part because:

> [A] narrow, rather than a sweeping, prohibition is more compatible with the fact that [the illegal gratuity statute] is merely one strand of an intricate web of regulations, both administrative and criminal, governing the acceptance of gifts and other self-enriching actions by public officials. . . . [T]his is an area where precisely targeted prohibitions are commonplace, and where more general prohibitions have been qualified by numerous exceptions. Given that reality, a statute in this field that can linguistically be interpreted to be either a meat axe or a scalpel should reasonably be taken to be the latter.

*Id.* at 409, 412, 119 S.Ct. 1402. The top strand in the "intricate web" is the bribery statute, and so defendants loosed by a narrow construction of it will not fall far

without tangling on other provisions. Specifically, individuals who pay public officials to avoid a threatened abuse rather than to engage in abuse will still be guilty of paying an illegal gratuity, a felony.

Finally, the majority argues that "if a party to litigation were to pay a judge money in exchange for a favorable decision, that conduct would—and should—constitute bribery, even if a trier of fact might conclude *ex post* that the judgment was on the merits legally proper." *Ante* at 151. But such a payment would constitute bribery even under Alfisi's construction of the statute because the hypothetical payer specifically intends to influence the judge to breach his duties by deciding the case based on the identity of the parties rather than the merits. The majority rightly notes that "[t]he legal merits, or lack thereof, of the judgment rendered is not an element of the offense." *Id.* But I do not understand Alfisi to argue otherwise. He asserts that "to act 'corruptly' is to act with the specific intent to secure an unlawful advantage or benefit." Under both the majority's *and* Alfisi's construction, all that matters is the payer's intent, which can be decided based upon the circumstances of the payment and need not depend on the payment's effect. A jury following Alfisi's statutory construction in the hypothetical case would no more need to decide whether a judgment was actually meritorious than would a jury following the majority's approach.

Because I conclude that Alfisi's requested jury instruction, unlike the one the district court gave, was legally correct, I turn to the second *Pujana–Mena* prong: prejudice. Alfisi objected to the instructions submitted, and, since they were erroneous, he is entitled to a new trial unless the error was harmless. *Anderson v. Branen,* 17 F.3d 552, 556 (2d Cir.1994). As indicated, Alfisi admitted at trial that he made payments to a government inspector (something he would have been hard put to deny in the face of the evidence), but argued that he did so only because the inspector threatened to breach his duty to provide critical inspection services in a timely manner if Alfisi did not pay. Alfisi supported this argument at trial with testimony by one government inspector that other inspectors were extorting and shaking down wholesalers and evidence that some of Cashin's inspections were accurate. If the jury had been properly instructed and had agreed with Alfisi on this point, it could not, in my view, have decided that the payments constituted bribes because Alfisi would not have acted "corruptly." The district court defined the "corruptly" element, however, as requiring only a finding that Alfisi sought to influence the inspector. Intent to influence was, of course, stipulated: Alfisi admits that he sought to influence the inspector not to abuse his official position in a way that harmed Alfisi. He was thus prejudiced by the district court's instructions because, under them, the jury could have credited the evidence that Alfisi was merely submitting to extortion but still convicted him of bribery. I therefore conclude that Alfisi's bribery convictions should be overturned.

## II. Necessarily Included Offenses under Rule 31(c)

I also disagree with the majority's conclusion that the payment of an illegal gratuity, 18 U.S.C. § 201(c)(1)(A), is "necessarily included" in bribery, 18 U.S.C. § 201(b)(1)(A), and therefore was properly submitted to the jury under Rule 31(c) of the Federal Rules of Criminal Procedure. Although the majority holds that it is well-established that payment of an illegal gratuity is a *lesser* included offense of bribery, *ante* at 152, I do not think that this is the relevant question. The issue is whether

payment of an illegal gratuity is a *necessarily* included offense of bribery under Rule 31(c). The Supreme Court in *Schmuck v. United States*, 489 U.S. 705, 719, 109 S.Ct. 1443, 103 L.Ed.2d 734 (1989), concluded that "necessarily included" offenses are a subset of "lesser included" offenses, and so the cases cited by the majority, which hold that payment of illegal gratuity is a lesser included offense of bribery, do not resolve the issue. Moreover, the majority's opinion does not apply the "elements test" (of which more in a moment), although the Supreme Court in *Schmuck*, 489 U.S. at 716, 109 S.Ct. 1443, and *Carter v. United States*, 530 U.S. 255, 260–63, 120 S.Ct. 2159, 147 L.Ed.2d 203 (2000), held that it is the standard to be employed in resolving questions under Rule 31(c). I think that, under the elements test, payment of an illegal gratuity is not *necessarily* included in the offense of bribery because the former requires an element that the latter does not. I therefore respectfully dissent from that portion of the majority's opinion, too.

The issue of "necessarily included" offenses arises from Rule 31(c):

> **Conviction of Less [sic] Offense.** The defendant may be found guilty of an offense *necessarily included in the offense charged* or of an attempt to commit either the offense charged or an offense necessarily included therein if the attempt is an offense.

Fed.R.Crim.P. 31(c) (emphasis added). Under this rule, a jury may receive an instruction on an offense "necessarily included" in an offense contained in the indictment at the request of either the prosecution or the defense even though the necessarily included offense is not itself charged in the indictment. The prosecution may want the instruction for fear that it has not proven all the elements of the offense charged in the indictment; the de-

fense in order to give the jury an option to convict the defendant on a less serious charge. The theory, it would appear, is that since the offense is "necessarily included" in the offense of indictment, in prosecuting or defending the case both parties *necessarily* had the opportunity and motivation to address the elements of the lesser charge.

*Schmuck* is the central authority on the meaning of "necessarily included offense." Before the Supreme Court's decision in that case, courts were using at least two different tests to determine whether one offense was necessarily included in another under Rule 31(c). Under one, the "inherent relationship" formula, a party could

> invoke Rule 31(c) when a lesser offense is established by the evidence adduced at trial in proof of the greater offense, with the caveat that there must also be an "inherent" relationship between the greater and lesser offenses, *i.e.*, they must relate to the protection of the same interests, and must be so related that in the general nature of these crimes, though not necessarily invariably, proof of the lesser offense is necessarily presented as part of the showing of the commission of the greater offense.

*Schmuck*, 489 U.S. at 715–16, 109 S.Ct. 1443 (citation and internal quotation marks omitted). The other test was the "traditional" or "elements" test. *Id.* at 716, 109 S.Ct. 1443. Under that test, "one offence is not 'necessarily included' in another unless the elements of the lesser offense are a subset of the elements of the charged offense. Where the lesser offense requires an element not required for the greater offense, no instruction is to be given under Rule 31(c)." *Id.*

The Supreme Court adopted the "elements" test, *id.*, holding that "[s]ince offenses are statutorily defined, th[e] comparison is appropriately conducted by

reference to the statutory elements of the offenses in question, and not, as the inherent relationship approach would mandate, by reference to conduct proved at trial regardless of the statutory definitions." *Id.* at 716–17, 109 S.Ct. 1443. The Supreme Court reaffirmed the elements test recently in *Carter,* 530 U.S. at 260–63, 120 S.Ct. 2159.

Returning to the case at bar, bribery under 18 U.S.C. § 201(b)(1)(A) applies to

> Whoever ... directly or indirectly, corruptly gives, offers or promises anything of value to any public official or person who has been selected to be a public official, or offers or promises any public official or any person who has been selected to be a public official to give anything of value to any other person or entity, with intent ... to influence any official act[.]

Payment of an illegal gratuity under 18 U.S.C. § 201(c)(1)(A), the allegedly "necessarily included offense," applies to

> Whoever ... otherwise than as provided by law for the proper discharge of official duty ... directly or indirectly gives, offers, or promises anything of value to any public official, former public official, or person selected to be a public official, for or because of any official act performed or to be performed by such public official, former public official, or person selected to be a public official....

On its face, then, the illegal gratuity statute requires an element that the bribery statute does not. To violate the illegal gratuity statute, a person must give or promise to give something of value to a public official—the public official must be the actual or promised payee. Not so under the bribery statute. A person can violate that statute by giving or promising to give a gift to "any other person or entity" so long as the gift is made pursuant to a promise to a public official. In

other words, under the bribery statute the public official need not be the *payee,* so long as he is the *promisee.* Thus, a person can violate the bribery statute without violating the illegal gratuity statute. Because the illegal gratuity statute requires that the public official be the payee, while the bribery statute does not, the "lesser offense requires an element not required for the greater offense," *Schmuck,* 489 U.S. at 716, 109 S.Ct. 1443, and thus is not necessarily included for purposes of Rule 31(c). This conclusion is shared by the only other judicial decisions we have found that have directly applied the elements test to this question. *See United States v. Hipkins,* 756 F.Supp. 233, 238 (D.Md.1991); *United States v. Passman,* 460 F.Supp. 912, 917–18 (W.D.La.1978).

As the Supreme Court has indicated, the elements test is compelled not only by statute, but also by the due process "right of the defendant to [have] notice of the charge brought against him." *Schmuck,* 489 U.S. at 718, 109 S.Ct. 1443 (citation omitted). Where, as here, an element is required by the lesser offense but is only one of two alternative elements in the greater offense, a jury charge on the lesser offense could deprive the defendant of the requisite notice. If a defendant were on trial for bribery under a theory that he made payments pursuant to a promise to a public official, that defendant might strategically avoid expending trial resources contesting the prosecutor's evidence tending to show that he made payments to the official if he knew that the prosecutor had irrefutable evidence that he also made payments to someone other than the official— the official's favorite charity, for example. The defendant might instead focus his case on the intent element of bribery. If the defendant were to refute the intent element, the prosecution might then seek an illegal gratuity charge. But if this were

permitted, the defendant would have been effectively deprived of notice that, by rebutting the evidence that he made payments to the official, he could defeat a charge against him. In short, the defendant would have been deprived of notice of what evidence would tend to exculpate him.[3]

The majority holds that the view that an unlawful gratuity is not a "lesser-included offense" of bribery is "contrary to our well-established law." *Ante* at 152. But the question presented to us on appeal is whether unlawful gratuity is a "necessarily included" offense under 31(c), not whether it is a "lesser-included" offense for other purposes. The Supreme Court has observed that those offenses that are "necessarily included" in a charged offense are a *subset* of those that are "lesser included." *See Schmuck*, 489 U.S. at 719, 109 S.Ct. 1443 (Rule 31(c) limits "lesser included offenses to those 'necessarily included in the offense charged.'"). For this reason, the cases relied upon by the majority are inapposite, as they mention merely that payment of an illegal gratuity is a "lesser included offense" of bribery in a general context without addressing the relevant question whether it is necessarily included under Rule 31(c). For example, in *United States v. Lasanta*, 978 F.2d 1300 (2d Cir. 1992), *abrogated on other grounds by Florida v. White*, 526 U.S. 559, 563, 119 S.Ct. 1555, 143 L.Ed.2d 748 (1999), cited by the majority, we addressed a defendant's fac-

tual assertion that the reason he offered money to detectives was not to influence them to do or omit to do something in violation of a lawful duty (bribery), but only so that they would leave him alone (unlawful gratuity). *Id.* at 1309. In the course of that discussion, we referred to unlawful gratuity in passing as a "lesser included offense" (*not* a "necessarily included offense") of bribery. *Id.* In *Zacher*, 586 F.2d at 915, also cited by the majority, the reference to "lesser included offense" is again entirely in passing, this time while distinguishing the two crimes on the basis of the requirement of a corrupt intent in one and not the other. We did not decide that one was a necessarily included offense of the other under Rule 31(c).

I do agree with the majority's conclusion that the district court properly denied Alfisi's motion for a charge on supplementation of the salary of an official under 18 U.S.C. § 209. I note, however, that Alfisi pursues this argument on appeal only to attempt to demonstrate the inconsistency of denying his motion while granting the government's request for a charge on payment of an illegal gratuity. The majority's dismissal of Alfisi's argument seems to me to prove his point.

Finally, in addressing the salary supplementation argument, the majority cites to *Campaneria v. Reid*, 891 F.2d 1014 (2d Cir.1989), *cert. denied*, 499 U.S. 949, 111 S.Ct. 1419, 113 L.Ed.2d 471 (1991), for the proposition that "[j]uries must be instruct-

---

**3.** My conclusion is that where the greater offense includes alternative elements, i.e., payment to the official or someone else, while the lesser offense requires one of those elements, i.e., payment to the official, then the lesser offense "requires" an element not required by the greater and thus is not necessarily included under Rule 31(c). I note that this case also presents the converse situation because bribery requires an element that is only an "alternative element" of illegal gratuity. Specifically, a bribe requires only a pres-

ent or future public official, while an illegal gratuity can be paid to a present, future, or past official. *Compare* 18 U.S.C. § 201(b)(1)(A), *with id.* § 201(c)(1)(A). I think it is an open question whether the elements test precludes a charge on a lesser offense that requires "A or B" when the greater offense requires merely "A." We need not reach this question, however, because it is clear to me that the elements test precludes a charge where the lesser offense requires "A" and the greater requires "A or B."

ed as to lesser-included offenses either [1] when one simply cannot commit the greater crime without committing the lesser *or* [2] when the evidence is such as to permit a finding that the lesser, but not the greater, offense has been committed." *Ante* at 152–53 (emphasis added). The first part of this statement effectively reflects the elements test. But in *Campaneria* we held: "A jury should be instructed on lesser included offenses when '(1) it is theoretically impossible to commit the greater crime without committing the lesser *and* (2) a reasonable view of the evidence would permit the jury to find that the defendant had committed the lesser, but not the greater, offense.' " 891 F.2d at 1022 (quoting *Rice v. Hoke*, 846 F.2d 160, 164–65 (2d Cir.1988)) (emphasis added). Changing the "and" to an "or," as the majority has done, creates the impression—false, I think—that a lesser offense can be charged without meeting the elements test.[4] Applying *Campaneria* to Alfisi's primary argument supports my conclusion, and not the majority's, because it *is* theoretically possible to commit the greater crime of bribery but not the lesser crime of payment of an illegal gratuity.

For these reasons, I conclude that the jury in Alfisi's case was improperly instructed on the charge of payment of an illegal gratuity under Rule 31(c) where the indictment only charged bribery. I therefore respectfully dissent on this issue also.

---

**4.** The majority's reliance on *Campaneria* is also misleading because that decision involved habeas review of a state court conviction, not Rule 31(c). *Campaneria*, 891 F.2d at 1016. It is nonetheless notable that, in that context, we still applied the elements test, which the majority nonetheless eschews here.